In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3317

ERICH SPECHT, ET AL.,

*Plaintiffs-Appellants*,

*v.*

GOOGLE INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 2572 — **Harry D. Leinenweber**, *Judge.*

ARGUED APRIL 2, 2012— DECIDED APRIL 4, 2014

Before ROVNER, SYKES, and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge*. During the dot-com boom of the 1990s, Erich Specht founded Android Data Corporation, and registered the "Android Data" trademark. The company ceased principal operations in 2002, but the Android Data mark remained registered to it. Five years later, Google Inc. rolled out its new Android operating system for mobile phones. Specht responded with this suit against Google,

alleging primarily that, by releasing the Android operating system, Google had infringed on his Android Data mark. Google counterclaimed that Specht had abandoned the mark after 2002, forfeiting his ability to assert any rights to it. Because we agree with the district court that the undisputed evidence in the record establishes that Specht abandoned the mark, we affirm the district court's grant of summary judgment to Google.

**Background**

Inspired by the recent success of a number of technology start-ups, Erich Specht decided in 1998 to enter the business world himself. He designed a suite of e-commerce software and formed Android Data Corporation (ADC), through which he intended to license the software to clients. ADC also performed a number of other web-based services to clients, including website hosting and design, and computer consulting services. Two years later, Specht applied to register the trademark "Android Data" with the United States Patent and Trademark Office. The application was approved in 2002.

Despite the trademark's approval, by the end of 2002 ADC stopped major operations. That year, the company lost five clients, prompting Specht to lay off his only employee, cancel ADC's internet service contract, and move the business into his home. Signifying the end of ADC's life, he transferred all of ADC's assets, including its software and the registered "Android Data" mark, to another of his wholly-owned companies, The Android's Dungeon, Incorporated (ADI). Specht spent all of the next year unsuccessfully seeking a buyer

for ADC's assets. As ADC was idle, he also shut off its phone line that year.

After 2002, Specht's business activities were limited. He continued to host ADC's website a while longer and conducted some hosting services for others. But he let the registration for the company's URL (androiddata.com) lapse in 2005, at which time he could no longer be reached at his associated email address. Specht passed out business cards in 2005 bearing the Android Data mark, but the record does not disclose how many, to whom, or why.

In 2007, about five years after he first began to wind down ADC's operations, Specht attempted to revive the use of the Android Data mark. First, to promote his software suite to catalog companies, Specht sent out a mass mailing in December 2007 with the Android Data mark. These mailings garnered no sales. Second, two months later, Specht attempted to license his software to a healthcare consulting firm, also to no avail. He made no other use of "Android Data" in 2007 or the next year. In April 2009, he used the mark once again when he resurrected his website, albeit with a slightly different URL (android-data.com) because his previous URL had by then been registered by a third party. He also assigned the Android Data mark to ADI, retroactive to the December 2002 asset transfer.

Meanwhile, during the years that Specht struggled with his shrinking business, another technology start-up calling itself "Android, Incorporated" began developing what would become known as the Android operating system for smart phones. Google purchased Android, Inc., in 2005. Two years

after the purchase, Google released to the public a beta version of its Android software. This release, in November 2007, occurred about a month before Specht had attempted to revive his use of the Android Data mark in his mail mailing that December.

Google's beta release of Android in November 2007 allowed software developers to populate the marketplace for Android applications before the finished product appeared on a mobile phone. About a year after Android's beta release, under a license from Google, T-Mobile US, Inc., released the first publicly-available smartphone to run Android. Ever since Android's beta release, Google has continuously been using the Android mark. Google tried in November 2007 to register "Android" as its own trademark, but the Patent and Trademark Office denied that application and Google's subsequent appeal, citing the likelihood of confusion with Specht's Android Data mark.

Specht, ADC, and ADI sued Google, the founders of Android, Inc., and the Open Handset Alliance (an industry consortium created to foster innovation in mobile phone technology) over the use of the Android mark. The plaintiffs (whom we will, except where necessary, refer to simply as "Specht") raise two claims under the Lanham Act: one for trademark infringement, *see* 15 U.S.C. § 1114(1), and one for unfair competition, *see id.* § 1125(a). They also advance a claim for a violation of Illinois's Deceptive Trade Practices Act, *see* 815 ILCS 510/2, and two claims for common-law trademark violations.

The district court dismissed all of the defendants except Google. No claim could be stated against Android, Inc.'s founders, the court explained, because as corporate officers they were not liable for Google's actions. The Open Handset Alliance was dismissed because it does not exist as a distinct legal entity. The district court also dismissed Specht and ADC as plaintiffs from the infringement claim; since Specht and ADC no longer owned the Android Data mark, the court ruled that only ADI had standing to assert infringement. Google answered the surviving allegations, raising two counterclaims relevant to this appeal. First, it sought a declaration that Specht had abandoned the mark, depriving him and his companies of any rights to it. (This claim also functions as an affirmative defense to Specht's Lanham Act claims.) Second, Google asked the district court to cancel the plaintiff's mark.

After Google moved for summary judgment, the parties locked horns over what evidence was properly before the court. Google challenged the admissibility of a slew of Specht's evidence. Relevant to this appeal, Google challenged Specht's attempts to submit screenshots from webpages of Specht's former clients from 2005, bearing the Android Data mark. The contested screenshots were from an internet archive service. The district court excluded these screenshots because, without an affidavit describing the reliability of the archive service, they were not properly authenticated. *See* FED. R. EVID. 901. Specht also brought evidentiary objections of his own. As relevant here, he objected to Google's screenshots of Specht's own website from August 2010 and to two of Google's press releases from November 2007 about the Android operating system. But the district court overruled both objections because

Specht had submitted an identical screenshot and had alleged in his complaint the information from the press releases.

Evidentiary issues resolved, the district court addressed the merits. It found that Specht had abandoned the mark in 2002; the few times Specht used the Android Data mark after 2002 did not demonstrate continued use or intent to resume use of the mark. Because Specht therefore had forfeited any rights he might have to the mark, the district court ruled that all of Specht's claims failed as a matter of law. The district court also issued Google's requested declaration, and canceled Specht's registration.

## Analysis

Before we proceed we must address appellate jurisdiction. Google filed a number of cross-claims that it later dismissed without prejudice, permitting it to reinstate those claims at some later point. Because these claims might be renewed, we ordinarily would dismiss this appeal for lack of finality as the litigation on those dismissed claims has not come to a conclusion in the district court. But at oral argument Google represented that it was willing to dismiss those claims with prejudice. Under authority such as *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776–77 (7th Cir. 1999), and *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 801–02 (7th Cir. 2001), Google's representation suffices to make the district court's entry of judgment appealable under 28 U.S.C. § 1291. Assured of our authority to resolve this appeal, we turn to the merits, first addressing two procedural rulings that preceded the decision on summary judgment.

Specht first attacks the district court's dismissal of him and ADC as plaintiffs in the trademark infringement claim, but the ruling was correct. The Lanham Act grants standing to trademark registrants, defining that term to include registrants and their "legal representatives, predecessors, successors, and assigns." 15 U.S.C. § 1127. Specht argues that, because the definition of "registrant" in the Lanham Act is conjunctive, both the registrants (Specht and ADC) *and* the assignee (ADI) have standing to sue. But the Lanham Act transfers standing to assignees, even if that party is not the registrant, to ensure that only the current owner of the mark can claim infringement. *See Gaia Techs, Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996); *Gillette Co. v. Kempel*, 254 F.2d 402, 404 (C.C.P.A. 1958) ("the assignee of a registration stands in the place of the registrant in all respects"). Since that party is now ADI, only ADI has standing to claim that the Android Data mark has been infringed.

Specht's second procedural challenge concerns evidentiary rulings that the district court made before ruling on Google's summary judgment motion. He contests the exclusion of the screenshots of certain client websites as they supposedly appeared in 2005, bearing the Android Data mark. He argues that the screenshots are admissible because the creators of the sites asserted from memory that the screenshots reflected how those sites appeared in 2005. But the district court reasonably required more than memory, which is fallible; it required authentication by someone with personal knowledge of reliability of the archive service from which the screenshots were retrieved. *See United States v. Bansal*, 663 F.3d 634, 667–68 (3d Cir. 2011) (screenshots from internet archive authenticated

via testimony of witness with personal knowledge of how internet archive works). Specht also argues that the district court improperly took judicial notice of news articles reflecting Google's assertion that it first used "Android" in commerce in November 2007. But the fact that Google first released a version of the Android software in November 2007 was alleged in Specht's complaint. That allegation is binding on Specht at summary judgment. *See Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005); *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995).

With the procedural issues resolved, we finally reach the central issue of this appeal—whether the undisputed evidence shows that the "Android Data" trademark was abandoned after 2002. If Specht abandoned and never resumed use of the mark, then Google could not have infringed on Specht's intellectual property when it later released the Android operating system in 2007. *See* 15 U.S.C. § 1127; *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 881 (7th Cir. 2007). A trademark is abandoned if its "use in commerce" has been discontinued with no intent to resume use. 15 U.S.C. § 1127; *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997). Under the Lanham Act, "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment," 15 U.S.C. § 1127. A prima facie showing of abandonment may be rebutted with evidence excusing the nonuse or demonstrating an intent to resume use. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir. 1992). But the intent to resume use in commerce must be formulated within the three years of nonuse. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 149 n.9 (2d Cir. 2007); *Imperial Tobacco Ltd., Assignee of Imperial Group*

*PLC v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990). Furthermore, the use must pertain to the sale of goods or provision of services. *See* 15 U.S.C. § 1127; *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012); *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Manaco*, 329 F.3d 359, 364 (4th Cir. 2003).

Under these principles, this appeal turns on three dates: the date (if any) that Specht discontinued using the Android Data mark, the date Google began using the Android mark in commerce and acquired rights to it, and the date (if any) that Specht intended to resume use of the mark. We discuss each in turn.

With respect to Specht's discontinued use of the mark, the evidence is conclusive that Specht ceased using the Android Data mark at the end of 2002. That is the year that ADC essentially shut down after losing five clients, laying off its one employee, and transferring its assets to ADI. Specht cites to four activities that he believes show his continued use of the Android Data mark after 2002, but they are insufficient.

First Specht notes that he attempted to sell his business's assets in 2003 and 2004. But an effort to sell the assets of a business is different from trading on the goodwill of a trademark to sell a business's goods or services and therefore does not constitute a use of the mark in commerce. *See Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 938 n.5 (9th Cir. 2006). Second, Specht observes that ADC's phone service was not canceled until 2003. But Specht included any phone

expenses from 2003 on ADC's 2002 balance sheet precisely because, in his view, ADC did not operate in 2003.

The remaining two activities are also insufficient to show a resumption of use. Specht points out that ADC's website was operating until 2005, and a website that bears a trademark may constitute a bona fide use in commerce. *See generally N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008). But Specht did not identify any goods or services ADC could have provided through or in connection with the website after 2002. *Cf. Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 129–30 (2d Cir. 2009); *N. Am. Med. Corp.*, 522 F.3d at 1218–19. As such, the website was not a use in commerce. Specht's reply that the site averaged 2,925 monthly visitors (actually the record shows only 808 monthly visits), goes nowhere because he furnished no evidence of any commercial interest associated with the visits. Finally, Specht maintains that his two sales efforts in 2007 (the mass mailing and his failed bid to license software to a healthcare firm) are evidence of commercial use of the mark. But these two efforts were isolated and not sustained; sporadic attempts to solicit business are not a "use in commerce" meriting the protection of the Lanham Act. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992); *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 20 (D.C. Cir. 2008). The district court, therefore, correctly determined that Specht had abandoned the mark at the end of 2002.

That brings us to the question of when Google first used the word "Android" in commerce, and the evidence is undisputed that it did so in November 2007. Specht concedes the point, but argues that Google never acquired any lasting right to the

Android mark because Google released its operating system without retaining control over how developers or mobile-phone companies like T-Mobile could use the software, giving them a so-called "naked license."

We see a number of flaws with Specht's "naked license" argument. First, he raises it for the first time on appeal, and so it is waived. *See Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 509 (7th Cir. 2013); *Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000). Second, because a naked licensor abandons an already-owned mark, *see Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 790 (7th Cir. 2011); *Doebler's Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823–24 (3d Cir. 2006), Specht's argument presupposes that Google had an enforceable right to the Android mark, a position that undercuts Specht's claim to be the holder of that right. Third, an argument about naked licensing is an argument about Google's rights against licensees, and licensees are not an issue in this case.

Even if we put these flaws aside, Specht's argument does not address the district court's sound conclusion that Google became the senior user of the Android mark when it used the mark in commerce in November 2007. By then, the Android mark lay abandoned. Once a mark is abandoned, it returns to the public domain, and may be appropriated anew. *See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'Ship*, 34 F.3d 410, 412 (7th Cir. 1994); *ITC Ltd.*, 482 F.3d at 147. By adopting the abandoned mark first, Google became the senior user, entitled to assert rights to the Android mark against the world. Its use since November 2007 has been uninterrupted and continuous. That is enough to warrant trademark protection. *See Zazu Designs*, 979 F.2d at 503; *Blue*

*Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1265 (5th Cir. 1975) ("even a single use in trade may sustain trademark rights if followed by continuous commercial utilization"); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194–95 (11th Cir. 2001) (release of software to end users is use in commerce even though no sale was made).

Specht replies that, even if he had abandoned the mark after 2002, he either resumed using or developed an intent to resume using the Android Data mark by December 2007, again citing his mass mailing. But by then it was too late. Specht had abandoned the mark by the end of 2002, and more than three years had passed before Google publicized its release of the Android operating system in November 2007. With the mark permanently abandoned by November 2007, Specht could not reclaim it the following month. The district court therefore correctly granted summary judgment on all of Specht's claims. *See TMT N. Amer. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997) ("abandonment … result[s] in the loss of trademark rights against the world").

Two final matters remain. First, Specht argues that the district court canceled his mark without the authority to do so. Although 15 U.S.C. § 1119 grants courts the authority to cancel a trademark's registration, the district court here cited 15 U.S.C. § 1064, which authorizes similar action by the Patent and Trademark Office. The district court's citation to the incorrect statutory provision does not invalidate its authority to cancel the mark. And cancellation in this case was proper. "Where, as here, a registrant's asserted rights to a mark are shown to be invalid, cancellation is not merely appropriate, it is the best course." *Central Mfg.*, 492 F.3d at 883.

Finally, Specht argues that the district court improperly awarded costs because the judgment was silent about whether the losing party was to bear the costs of the litigation. This argument is frivolous. A judgment silent about costs is a judgment allowing costs to the prevailing party. *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 221 (7th Cir. 1988). Specht's argument that Google is not the prevailing party lacks any merit. Google is the only party to the suit who succeeded on a significant legal issue in the suit. *See King v. Ill. State Bd. of Elections*, 410 F.3d 404, 414 & n.10 (7th Cir. 2005). Indeed, Google was awarded all the relief for which it asked. The order granting costs to Google was proper.

AFFIRMED.