(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HANA FINANCIAL, INC. *v.* HANA BANK ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 13–1211.   Argued December 3, 2014—Decided January 21, 2015

Petitioner, Hana Financial, Inc., and respondent Hana Bank both provide financial services to individuals in the United States.  When Hana Financial sued Hana Bank for trademark infringement, Hana Bank invoked in defense the tacking doctrine, under which lower courts have provided that a trademark user may make certain modifications to its mark over time while, in limited circumstances, retaining its priority position.  Petitioner's claim was tried before a jury, and the District Court adopted in substantial part the jury instruction on tacking proposed by petitioner.  The jury returned a verdict in respondent's favor.  Affirming, the Ninth Circuit explained that the tacking inquiry was an exceptionally limited and highly fact-sensitive matter reserved for juries, not judges.

*Held*: Whether two trademarks may be tacked for purposes of determining priority is a question for the jury.  Pp. 3–8.

   (a) Lower courts have held that two marks may be tacked when they are considered to be "legal equivalents," *i.e.,* they "create the same, continuing commercial impression."  *Van Dyne-Crotty, Inc.* v. *Wear-Guard Corp.* 926 F. 2d 1156, 1159.  And "commercial impression" "must be viewed through the eyes of a consumer."  *DuoProSS Meditech Corp.* v. *Inviro Medical Devices, Ltd.*, 695 F. 3d 1247, 1253. When the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer.  See, *e.g., United States* v. *Gaudin*, 515 U. S. 506, 512.  Pp. 3–5.

   (b) Each of petitioner's four arguments in support of its view that tacking is a question of law to be resolved by a judge is unpersuasive. First, it may be true that the "legal equivalents" test involves a legal standard, but such " 'mixed question[s] of law and fact,' [have] typi-

cally been resolved by juries." *Gaudin*, 515 U. S., at 512. And any concern that a jury may improperly apply the relevant legal standard can be remedied by crafting careful jury instructions. Second, petitioner offers no support for its claim that tacking determinations create new law in a unique way that requires those determinations to be reserved for judges. Third, petitioner worries that the predictability required for a functioning trademark system will be absent if tacking questions are assigned to juries, but offers no reason why trademark tacking should be treated differently from the tort, contract, and criminal justice systems, where juries answer often-dispositive factual questions or make dispositive applications of legal standards to facts. Finally, in arguing that judges have historically resolved tacking disputes, petitioner points to cases arising in the contexts of bench trials, summary judgment, and the like, in which it is undisputed that judges may resolve tacking disputes. Pp. 5–8.

735 F. 3d. 1158, affirmed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–1211

HANA FINANCIAL, INC., PETITIONER *v.* HANA BANK, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 21, 2015]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users. Recognizing that trademark users ought to be permitted to make certain modifications to their marks over time without losing priority, lower courts have provided that, in limited circumstances, a party may clothe a new mark with the priority position of an older mark. This doctrine is called "tacking," and lower courts have found tacking to be available when the original and revised marks are "legal equivalents" in that they create the same, continuing commercial impression. The question presented here is whether a judge or a jury should determine whether tacking is available in a given case. Because the tacking inquiry operates from the perspective of an ordinary purchaser or consumer, we hold that a jury should make this determination.

I

Petitioner, Hana Financial, and respondent Hana Bank, a subsidiary of respondent Hana Financial Group, both

provide financial services to individuals in the United States. Hana Bank (hereinafter respondent) was established in 1971 as a Korean entity called Korea Investment Finance Corporation. In 1991, that entity changed its name to "Hana Bank" and began using this name in Korea. In 1994, it established a service called Hana Overseas Korean Club to provide financial services to Korean expatriates, and specifically advertised that service in the United States. Those advertisements used the name "Hana Overseas Korean Club" in both English and Korean, and included the name "Hana Bank" in Korean and respondent's "dancing man" logo. See App. 206. In 2000, respondent changed the name of the Hana Overseas Korean Club to "Hana World Center." In 2002, respondent began operating a bank in the United States under the name "Hana Bank." This enterprise amounted to respondent's first physical presence in the United States.

Petitioner was established in 1994 as a California corporation called Hana Financial. It began using that name and an associated trademark in commerce in 1995. In 1996, it obtained a federal trademark registration for a pyramid logo with the name "Hana Financial" for use in connection with financial services.

In 2007, petitioner sued respondent, alleging infringement of its "Hana Financial" mark. As relevant here, respondent denied infringement by invoking the tacking doctrine and claiming that it had priority. The District Court initially granted summary judgment to respondent on the infringement claim, but the Court of Appeals for the Ninth Circuit reversed, holding that there were genuine issues of material fact as to priority. On remand, the infringement claim was tried before a jury. The District Court adopted in substantial part the jury instruction proposed by petitioner, and, without objection from petitioner, instructed the jury as follows:

"A party may claim priority in a mark based on the first use date of a similar but technically distinct mark where the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark. This is called 'tacking.' The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." App. 173; see *id.,* at 140 (proposed instruction).

The jury returned a verdict in favor of respondent, and the District Court denied petitioner's motion for judgment as a matter of law.

The Court of Appeals for the Ninth Circuit affirmed. The court explained that, although tacking applies only in "exceptionally narrow circumstances," 735 F. 3d 1158, 1160 (2013) (internal quotation marks omitted), it "'requires a highly fact-sensitive inquiry'" that is "reserved for the jury," *ibid.* (quoting *One Industries, LLC* v. *Jim O'Neal Distributing, Inc.*, 578 F. 3d 1154, 1160 (CA9 2009)). The court acknowledged, however, that whether tacking should be decided by juries or judges "is the subject of a circuit split." 735 F. 3d, at 1164, n. 5 (noting that the Federal and Sixth Circuits "evaluate tacking as a question of law"); see *Van Dyne-Crotty, Inc.* v. *Wear-Guard Corp.*, 926 F. 2d 1156, 1159 (CA Fed. 1991); *Data Concepts, Inc.* v. *Digital Consulting, Inc.*, 150 F. 3d 620, 623 (CA6 1998).

We granted certiorari, 573 U. S. \_\_\_ (2014), and now affirm.

## II

As discussed above, the general rule adopted by lower courts has been that two marks may be tacked when the original and revised marks are "legal equivalents." This term refers to two marks that "create the same, continuing

commercial impression" so that consumers "consider both as the same mark."[1] *Van Dyne-Crotty, Inc.*, 926 F. 2d, at 1159 (internal quotation marks omitted); see, *e.g., George & Co., LLC* v. *Imagination Entertainment Ltd.*, 575 F. 3d 383, 402 (CA4 2009); *Brookfield Communications, Inc.* v. *West Coast Entertainment Corp.*, 174 F. 3d 1036, 1047–1048 (CA9 1999); *Data Concepts, Inc.*, 150 F. 3d, at 623. "The commercial impression that a mark conveys must be viewed through the eyes of a consumer." *DuoProSS Meditech Corp.* v. *Inviro Medical Devices, Ltd.*, 695 F. 3d 1247, 1253 (CA Fed. 2012); see 3 J. McCarthy, Trademarks and Unfair Competition §17:26, p. 17–71 (4th ed. 2014) ("'Commercial impression,' like most issues in trademark law, should be determined from the perspective of the ordinary purchaser of these kinds of goods or services").

Application of a test that relies upon an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury. Indeed, we have long recognized across a variety of doctrinal contexts that, when the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer. See, *e.g., United States* v. *Gaudin*, 515 U. S. 506, 512 (1995) (recognizing that "'delicate assessments of the inferences a 'reasonable [decisionmaker]' would draw . . . [are] peculiarly one[s] for the trier of fact'" (quoting *TSC Industries, Inc.* v. *Northway, Inc.*, 426 U. S. 438, 450 (1976); first alteration in original); *id.,* at 450, n. 12 (observing that the jury has a "unique competence in applying the 'reasonable man' standard"); *Hamling* v. *United States*, 418 U. S. 87, 104–105 (1974) (emphasizing "the ability of the juror to ascertain the sense of the 'average person'" by drawing upon "his own

---

[1] The parties do not question the existence of the tacking doctrine or this substantive standard.

knowledge of the views of the average person in the community or vicinage from which he comes" and his "knowledge of the propensities of a 'reasonable' person"); *Railroad Co.* v. *Stout*, 17 Wall. 657, 664 (1874) ("It is assumed that twelve men know more of the common affairs of life than does one man, [and] that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge").

This is certainly not to say that a judge may never determine whether two marks may be tacked. If the facts warrant it, a judge may decide a tacking question on a motion for summary judgment or for judgment as a matter of law. See Fed. Rules Civ. Proc. 50, 56(a). And if the parties have opted to try their case before a judge, the judge may of course decide a tacking question in his or her factfinding capacity. We hold only that, when a jury trial has been requested and when the facts do not warrant entry of summary judgment or judgment as a matter of law, the question whether tacking is warranted must be decided by a jury.

## III

Attempting to overcome our conclusion, petitioner offers four reasons why, in its view, tacking is a question of law that should be resolved by a judge. None persuades us.

Petitioner first observes that the "legal equivalents" test involves the application of a legal standard. See Brief for Petitioner 20. True enough, but "the application-of-legal-standard-to-fact sort of question . . . , commonly called a 'mixed question of law and fact,' has typically been resolved by juries." *Gaudin*, 515 U. S., at 512; see *id.*, at 514 ("[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion . . ."); *Miller* v. *Fenton*, 474 U. S. 104, 113 (1985) ("[A]n issue does not lose its factual character merely because its resolution is dispositive of

the ultimate . . . question"). The "mixed" analysis that takes place during the tacking inquiry is no different. And insofar as petitioner is concerned that a jury may improperly apply the relevant legal standard, the solution is to craft careful jury instructions that make that standard clear. Here, however, petitioner can hardly criticize the instruction the District Court gave the jury, as it was essentially the instruction petitioner proposed.

Second, petitioner argues that tacking determinations will "create new law that will guide future tacking disputes"—a task reserved for judges. Brief for Petitioner 21. It is not at all clear, however, why a tacking determination in a particular case will "create new law" any more than will a jury verdict in a tort case, a contract dispute, or a criminal proceeding. Petitioner insists that tacking questions "have to be" resolved by comparing two marks in a given case "against those addressed in other tacking cases," *id.,* at 22, but we do not agree. Of course, in deciding summary judgment motions, or in making rulings in bench trials, judges may look to past cases holding that trademark owners either were or were not entitled to tacking as a matter of law. But petitioner offers no support for the claim that tacking cases "have to be" resolved by reliance on precedent. Indeed, in many of the cases petitioner cites in support of this argument, the courts in question relied on precedent only to define the relevant legal standard. See, *e.g., Specht* v. *Google Inc.*, 758 F. Supp. 2d 570, 583–585 (ND Ill. 2010), aff'd, 747 F. 3d 929 (CA7 2014); *Children's Legal Servs. PLLC* v. *Kresch*, 2008 WL 1901245, *1–*2 (ED Mich., Apr. 25, 2008), aff'd *sub nom. Children's Legal Servs., P. L. L. C.* v. *Saiontz, Kirk & Miles, P. A.*, 2009 WL 1868809 (CA6, June 18, 2009).[2]

_____

[2] Our decision in *Markman* v. *Westview Instruments, Inc.*, 517 U. S. 370 (1996), is not to the contrary. In *Markman*, we held that the task

Third, and related, petitioner worries that the predictability required for a functioning trademark system will be absent if tacking questions are assigned to juries. See Brief for Petitioner 25–27. But, again, the same could be said about the tort, contract, and criminal justice systems: In all of these areas, juries answer often-dispositive factual questions or make dispositive applications of legal standards to facts. The fact that another jury, hearing the same case, might reach a different conclusion may make the system "unpredictable," but it has never stopped us from employing juries in these analogous contexts. Petitioner has offered no reason why trademark tacking ought to be treated differently. Moreover, decisionmaking in fact-intensive disputes necessarily requires judgment calls. Regardless of whether those judgment calls are made by juries or judges, they necessarily involve some degree of uncertainty, particularly when they have to do with how reasonable persons would behave.

Finally, petitioner argues that, as a historical matter, judges have resolved tacking disputes. See Brief for Petitioner 30–35. But petitioner relies on cases in which judges have resolved tacking disputes in bench trials, at summary judgment, or the like. See, *e.g., Drexel Enterprises, Inc.* v. *Richardson*, 312 F. 2d 525, 526 (CA10 1962) ("[This action] was tried without a jury"); *Perfectform Corp.* v. *Perfect Brassiere Co.*, 256 F. 2d 736, 738 (CA3 1958) ("The district court dismissed the complaint"); *John*

—————

of construing patent terms falls to judges and not to juries. We held as much because "[t]he construction of written instruments is one of those things that judges often do and are likely to do better than jurors unburdened by training in exegesis." *Id.,* at 388; see *Teva Pharmaceuticals USA, Inc.,* v. *Sandoz, Inc.*, *ante*, at 5. The tacking inquiry, by contrast, involves a factual judgment about whether two marks give the same impression to consumers. Making that kind of judgment is, as discussed above, not "one of those things that judges often do" better than jurors.

*Morrell & Co.* v. *Hauser Packing Co.*, 20 F. 2d 713 (CA9 1927) ("In the court below, there was a dismissal of both the bill and of defendant's counterclaim"); *Beech-Nut Packing Co.* v. *P. Lorillard Co.*, 299 F. 834, 835 (NJ 1924) (equitable claims tried solely before a judge). As we have noted, it is undisputed that judges may resolve tacking disputes in those contexts. But recognizing as much does not gainsay our conclusion that, when a jury is to be empaneled and when the facts warrant neither summary judgment nor judgment as a matter of law, tacking is a question for the jury.

\*　　\*　　\*

The Ninth Circuit correctly held that whether two marks may be tacked for purposes of determining priority is a question for the jury. Accordingly, the judgment of the Ninth Circuit is affirmed.

*It is so ordered.*