CHRISTEN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the result reached by the court but do not join the reasoning in Subsection I.B.2 of its opinion. In my view, the narrow holding in Part I is dictated by the standard of review on appeal, and by the defenses actually pursued by defendants.
I.
Presented with two T-shirts — one bearing an iconic image of Bob Marley and one bearing the image of an unknown African *1084 American male with dreadlocks — members of the public were asked: (1) “Who do you think made or put out this particular T-shirt?” and (2) “Who do you think gave their permission or approval for this particular T-shirt to be made or put out?” The first question bears upon a “source or origin” claim. Because plaintiffs concede their infringement claim “is not based on consumer confusion as to the source or origin of Defendants’ merchandise,” the responses to the first survey question lend no support to plaintiffs’ cause.
If any evidence of consumer confusion is to be gleaned from the responses to plaintiffs’ survey, it would have to come from the second question: “Who do you think gave their permission or approval for this particular T-shirt to be made or put out?” 37% of respondents in the test group and 20% of respondents in the control group answered “Bob Marley” (or “the person on the shirt”) or his heirs, estate, or agents. Respondents were then asked why they thought this was the case. Representative answers include: “Because I don’t know anyone else that would have those types of rights,” “Because his picture is on the shirt,” and “I’m assuming there’s some kind of copyright.”
The responses to the second question show two things: (1) members of the public have no problem recognizing the late Bob Marley, an internationally famous musician; and (2) members of the public share a common lay legal opinion that Marley, or someone connected with Marley, must have sponsored the T-shirt. But this lay legal opinion is likely to be held by the majority of survey respondents every time merchandise bears a readily recognizable celebrity image. See McCarthy on Trademarks and Unfair Competition § 24:12 (4th ed.2014) (describing survey in which 91.2% of consumers agreed with the statement: “No product can bear the name of an entertainer, cartoon character, or some other famous person unless permission is given for its use by the owner of the name or character.”).
The T-shirts in this case do not bear an affixed, recognizable label, logo, or mark. Indeed, plaintiffs repeatedly refer to their asserted interest as “trademark-like.” They argue that their interest lies in Marley’s image itself, which appears on the T-shirt and was arguably the very product being purchased. For this reason, this case presents a unique situation: rather than being deceived by the mark on the product being purchased, the facts suggest that consumers may have received exactly what they bargained for: a T-shirt with a picture of Bob Marley on the front.
The purpose of a § 43(a) claim is to prevent consumers from being misled or tricked into making purchases through use of a trademark. POM Wonderful LLC v. Coca-Cola Co., — U.S. -, 134 S.Ct. 2228, 2233, 189 L.Ed.2d 141 (2014) (“The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling.”); Int’l Order of Job’s Daughters v. Lindeburg & Co., 633 F.2d 912, 918 (9th Cir.1980) (observing the purpose of Lanham Act trademark provision is “to protect consumers against deceptive designations of the origin of goods and, conversely, to enable producers to differentiate their products from those of others”). The responses to the second survey question tell us nothing about whether consumers’ purchasing decisions are likely to be influenced by confusion about who had given permission to produce the shirts.[1] Plaintiffs did not allege *1085 that the use of Marley’s image conveyed an indication or endorsement that the T-shirts were of a particular quality, or that they were the “official” T-shirt that had special memorabilia value. Plaintiffs’ claim is simply that consumers mistakenly understood that Marley (or someone connected with his estate) must have given permission for the use of Marley’s image on the T-shirt. Without a showing that consumers cared whether permission had been given, the second survey question only shows that most consumers share a common lay legal opinion that a celebrity must give permission before his or her image may be used; it does nothing to suggest that the use of Marley’s image on the T-shirt runs afoul of the purpose of the Lanham Act.
In my view, the word “confusion” in § 43(a) must be read in light of the Lan-ham Act’s purpose. Therefore, where a celebrity image is itself the only indication of sponsorship, I would hold that a finding of actual confusion under § 43(a) must be supported by some evidence that the confusion could have had an impact on the consumers’ purchasing decisions. See Stacey L. Dogan & Mark A. Lemley, The Merchandising Right: Fragile Theory or Fait Accompli, 54 Emory L.J. 461, 488 (2005) (“If individuals don’t care one way or the other whether the trademark holder sponsors or endorses such products or whether the products are officially licensed, then the competitive process certainly does not suffer from their assumption that the use required a license.”). If not read in context, Downing's actual contusion factor becomes a nullity because consumers’ common understanding about who must have authorized the use of a celebrity image may well have nothing to do with the product. Here, I would give no weight to plaintiffs’ survey responses because plaintiffs did not show that consumers might be misled into buying the T-shirt based on whether permission had been given.
II.
Evidence of actual consumer confusion is just one of the eight factors considered under Downing, and, in this case, several other Downing factors support the jury’s finding of consumer confusion. See Hana Fin., Inc. v. Hana Bank, 574 U.S. -, 135 S.Ct. 907, 190 L.Ed.2d 800 (2015) (“Application of a test that relies upon an ordinary consumer’s understanding of the impression that a mark conveys falls comfortably within the ken of a jury.... [W]hen the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decision maker that ought to provide the fact-intensive answer.”). On this record, I cannot conclude that “the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is the contrary to the jury’s verdict.” Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir.2002).
It is difficult to over-state the extent to which this result is the product of the unique way this case was litigated. We address the case as it is presented to us, but it is worth restating that our holding is very narrow, and largely a function of issues and defenses the parties chose not to litigate.

. The record contains only three survey responses that might have possibly affected purchasing decisions: “He should get paid when someone uses his picture, even if he’s not with us,’’ “If he was my family, I would want someone to ask my permission if they were going to sell T-shirts of a dead family member,” and "Because it's based on a celebrity, and his son will probably get the royalties.” *1085 Even when construed in the light most favorable to plaintiffs, three responses are insuffl-cient to establish actual consumer confusion.