

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 27 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SAN MIGUEL PURE FOODS COMPANY, INC.; et al., <br><br>     Plaintiffs-counter-defendants - Appellees, <br><br> And <br><br> SAN MIGUEL CORPORATION; et al., <br><br>     Counter-defendants - Appellees, <br><br>   v. <br><br> RAMAR INTERNATIONAL CORPORATION, AKA Ramar Foods International Corporation, <br><br>     Defendant-counter-claimant - Appellant. | No. 13-55537 <br><br> D.C. No. 2:11-cv-09747-RGK-FMO <br><br> MEMORANDUM* |
| SAN MIGUEL PURE FOODS COMPANY, INC.; et al., <br><br>     Plaintiffs-counter-defendants - Appellants, | No. 13-55965 <br><br> D.C. No. 2:11-cv-09747-RGK-FMO |

     *    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

And

SAN MIGUEL CORPORATION; et al.,

      Counter-defendants - Appellants,

  v.

RAMAR INTERNATIONAL CORPORATION,

      Defendant-counter-claimant - Appellee.

Appeals from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 7, 2015
Pasadena, California

Before: D.W. NELSON, TASHIMA, and CLIFTON, Circuit Judges.

Appellees San Miguel Corporation, San Miguel Pure Foods Company, Magnolia Inc., Arko Foods International, Inc., and Rayland Enterprises LLC (collectively, "San Miguel") filed an action against Appellant Ramar International seeking a declaratory judgment that San Miguel's use of the "Magnolia" trademark on certain food products did not constitute trademark infringement. Ramar

2

counterclaimed against San Miguel for trademark infringement, false designation of origin and false representation, and unfair competition under California law.

The district court granted partial summary judgment in favor of Ramar, concluding that San Miguel's use of the Magnolia trademark constituted infringement, subject to affirmative defenses. The issues of whether San Miguel's infringement was willful and whether damages should be awarded were tried to a jury and resulted in a verdict in favor of San Miguel, concluding that the infringement was not willful and awarding no damages. San Miguel also prevailed before the district court on one of its affirmative defenses, the equitable defense of laches, based on Ramar's delay in objecting to San Miguel's use of the trademark on butter, margarine, and cheese products ("BMC") sold in the United States. In the end, San Miguel prevailed for the most part, but the district court did grant Ramar a limited prospective injunction against San Miguel's use of the Magnolia mark in the United States for food services and products other than the BMC products.

Ramar appealed, challenging the district court's denial of its motion for judgment as a matter of law as to willful infringement, the jury's verdict finding no willful infringement, the district court's judgment in favor of San Miguel on its laches defense, and the BMC exception to the permanent injunction against San

Miguel's use of the Magnolia trademark. San Miguel cross-appealed, disputing the permanent injunction in favor of Ramar. We reverse the injunction entered in favor of Ramar and affirm the balance of the judgment in favor of San Miguel.

### 1. Willful Infringement

Reviewing de novo, the district court did not misstate the law in its jury instruction regarding willful infringement by identifying "factors" the jury could consider and by identifying "intent to deceive or confuse consumers" as one of those factors. *See Gantt v. City of Los Angeles*, 717 F.3d 702, 706 (9th Cir. 2013). We have held that "[w]illful infringement carries a connotation of deliberate intent to deceive." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *superseded by statute on other grounds*, Trademark Amendments Act of 1999, Pub.L. No. 106–43, 113 Stat. 218). Thus, the jury instruction was an accurate statement of the law.

Ramar's theory of willfulness, premised upon Ninth Circuit Model Jury Instruction No. 15.27, was accurately and adequately covered by the jury instruction which required the jury to consider if San Miguel had a "reasonable and good faith belief" that its actions were not infringing. We have used such language to describe the knowledge component of willfulness. *See Int'l Olympic Comm. v.*

4

*San Francisco Arts & Athletics*, 781 F.2d 733, 739 (9th Cir.), *amended by* 789 F.2d 1319 (9th Cir. 1986) (holding that conduct is not willful if a party "reasonably thought that its proposed usage was not barred by the statute"), *aff'd sub nom. San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987); *cf. Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.").  Moreover, the district court did not abuse its discretion by tailoring the instruction to the facts of the case.  *See Gantt*, 717 F.3d at 706 (we review the district court formulation of jury instructions for abuse of discretion).

The district court properly denied Ramar's motion for judgment as a matter of law because there was substantial evidence to support the jury's verdict.  *See Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1163 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907 (2015).  Infringement is not willful if the party reasonably believes its usage of a trademark is not barred by law.  *Int'l Olympic Comm.*, 781 F.2d at 738. There was evidence in the record that San Miguel used the Magnolia mark on BMC products to invoke the goodwill San Miguel had developed in the Philippines, not the goodwill built by Ramar in the United States.  The record

supports the proposition that San Miguel believed it had established trademark rights with respect to its imported BMC products. San Miguel was the first user of the mark in the United States for those products. BMC products are different from ice cream. At trial, Ramar's vice president admitted that he "can't imagine that someone who's looking for ice cream would be deterred from their ice cream by a butter or a cheese product," and further that Ramar's products were "not competitive" with San Miguel's BMC products because Ramar is a frozen food manufacturer. The jury could reasonably infer from that testimony and from other evidence that San Miguel did not willfully infringe by using the mark on BMC products.

Although Ramar argues San Miguel was barred as a matter of law from believing it had trademark rights to Magnolia for BMC products under the territoriality principle, the Ninth Circuit recognizes the "famous-mark exception," which allows an earlier foreign user to assert rights "when foreign use of a mark achieves a certain level of fame for that mark within the United States . . . ." *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1093–96 (9th Cir. 2004). Ramar had not obtained trademark registration for its ice cream products when the parties' dispute over trademark rights began, through the 1980's and 1990's. Because ownership of the mark was legitimately in dispute and San Miguel had a

6

viable legal theory that it owned the mark in the United States, the district court did not err by admitting evidence of San Miguel's development of the Magnolia mark in the Philippines and its public exposure in the United States.

Nor did the district court err by declining to adopt Ramar's position that BMC goods are related to ice cream as a matter of law. The issue of whether or not goods are related or complementary is a question of fact. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290–91 (9th Cir. 1992). As noted above, even Ramar's vice president testified that he did not think BMC and ice cream were competitive or that a person would be deterred from buying ice cream based upon BMC products. Thus, the district court did not err by concluding that San Miguel could believe BMC goods are not related or complementary to ice cream.

The jury was not persuaded by Ramar's other evidence of willful infringement, and it could reasonably reach the decision it did. We decline to consider evidence not introduced at trial. *See Ortiz v. Jordan*, 562 U.S. 180, 184

(2011) (once a case proceeds from summary judgment to trial, claims "must be evaluated in light of the character and quality of the evidence received in court").[1]

*2. Laches*

The district court did not err by ruling in favor of San Miguel on its laches defense.  Although Ramar argues that San Miguel did not present sufficient evidence of prejudice, the district court could properly find that San Miguel and its distributors were prejudiced because they invested resources to build a business specifically around the Magnolia mark during the period.  If Ramar had not delayed, San Miguel could have devoted the time and resources to develop an alternative brand and marketing strategy.  That loss of resources and opportunity can constitute prejudice.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 839 (9th Cir. 2002); *Internet Specialties W., Inc. v. Milon-DiGiorgio*

---

[1] We grant San Miguel's motion to strike certain documents and arguments based on those documents that were not before the district court at the time its decision was issued.  *See Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988) ("Papers submitted to the district court after the ruling that is challenged on appeal should be stricken from the record on appeal.").  In turn, we deny Ramar's request for judicial notice of those same documents because the district court did not have the opportunity to consider them when making its decision.  *See Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 393 n.7 (9th Cir. 2000) ("It is rarely appropriate for an appellate court to take judicial notice of facts that were not before the district court.").

8

*Enter., Inc.*, 559 F.3d 985, 992 (9th Cir. 2009)[2] (finding no prejudice in part because company "had not shown that it would have to undertake significant advertising expenditures to change its name at this juncture.").

*3. Permanent Injunction*

We reverse the district court's grant of a permanent injunction because Ramar did not present evidence of irreparable injury. That showing is necessary to obtain a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Subsequent to the entry by the district court of the order granting this injunction, we made clear that, to establish irreparable injury, a trademark owner must do more than merely demonstrate that a trademark has been infringed

---

[2] Although Ramar relies upon *Internet Specialties* for the proposition that San Miguel's efforts were merely to "promot[e] the infringed name" instead of an investment in Magnolia as "the identity of the business in the minds of the public," this case is easily distinguishable from *Internet Specialties*. 559 F.3d at 992. In that case, we gave deference to the district court's finding that the defendant's advertising created no brand awareness because the company typically did not include the mark in its pay-per-click advertisements. *Id*. Additionally, we noted that such pay-per-click advertising created "little to no brand awareness." *Id*. As such, the defendant's evidence did not indicate that it built a business around the mark. *Id*. Moreover, the district court in that case found that internet service providers "frequently change[d] their names due to consolidations and mergers, and that the additional costs of registering a new domain name are minimal." *Id*. In contrast, the record supports the district court's finding that San Miguel's promotional efforts included the Magnolia mark in conjunction with San Miguel's name to create brand awareness, and that San Miguel would be harmed if it had to change the brand name for its BMC products after years of using the Magnolia mark.

9

or that consumers have been confused. *Herb Reed Enter., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).[3]  Irreparable harm may not be based on speculative injury. *Solidlus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1098 (9th Cir. 2007).

In this case, the district court incorrectly "presumed Ramar ha[d] suffered irreparable injury" because "the San Miguel Parties['] use of the Magnolia mark created a likelihood of confusion."  Evidence of infringement or likelihood of confusion alone may not give rise to a presumption of irreparable harm. *Herb Reed*, 736 F.3d at 1250.  The district court's finding of irreparable harm was based on the speculation that "Ramar *would* effectively lose control over the Magnolia brand," not that it actually had.  To support its conclusion, the district court cited to evidence that Ramar had expanded its business operations to 2,000 stores and non-Asian retailers.  However, this evidence of Ramar's growth did not show that San Miguel's infringement caused irreparable harm to Ramar.  Instead of focusing on actual harm, the district court justified the injunction by reasoning that San Miguel should not be able to "introduce new Magnolia products more broadly."  That is a

---

[3] We note that the district court did not have the benefit of the *Herb Reed* decision when it issued its order granting a permanent injunction.

prediction about the future, not a finding based on proof of actual harm needed to support the grant of an injunction.

None of Ramar's evidence of actual confusion indicated that San Miguel's use of the Magnolia mark had damaged Ramar's goodwill or that Ramar had lost control over its business reputation. All comments about both Ramar and San Miguel's products were positive; none indicated that Ramar lost customers or goodwill because of San Miguel's use of the mark on BMC goods. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (loss of prospective customers sufficient evidence of irreparable injury). In fact, the district court in analyzing laches found that "[t]he sale of Magnolia BMC products enhances rather than detracts from the brand." That finding is perhaps unsurprising given that Ramar's president admitted that the company originally adopted the Magnolia trademark to "leverage the existing strength of San Miguel's Magnolia brand" to promote its sales of Filipino-style ice cream. Our decision does not preclude the possibility that injunctive relief might someday be appropriate, but at this point there is no evidence in the record to support a finding of irreparable harm, so we vacate the permanent injunction.

Accordingly, we affirm the district court's judgment in favor of San Miguel. We reverse the permanent injunction barring San Miguel from using the Magnolia trademark for food products and food services.

Costs awarded to San Miguel.

**AFFIRMED in part; REVERSED in part.**