RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GENERAL MOTORS CORPORATION,
                            *Plaintiff-Appellant,*

            *v.*

KEYSTONE AUTOMOTIVE INDUSTRIES, INC., and
TONG YANG INDUSTRY COMPANY, LIMITED,
                            *Defendants-Appellees.*

No. 05-1712

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-74587—Nancy G. Edmunds, District Judge.

Argued: April 27, 2006

Decided and Filed: June 30, 2006

Before: KEITH, MERRITT, and DAUGHTREY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Ernie L. Brooks, BROOKS KUSHMAN, P.C., Southfield, Michigan, for Appellant. Thomas N. Young, YOUNG & BASILE, P.C., Troy, Michigan, Robert M. Kalec, DEAN & FULKERSON, P.C., Troy, Michigan, for Appellees. **ON BRIEF:** Ernie L. Brooks, Robert C.J. Tuttle, Frank A. Angileri, Marc Lorelli, BROOKS KUSHMAN, P.C., Southfield, Michigan, for Appellant. Thomas N. Young, Thomas E. Bejin, YOUNG & BASILE, P.C., Troy, Michigan, Robert M. Kalec, DEAN & FULKERSON, P.C., Troy, Michigan, for Appellees.

---

## OPINION

---

MERRITT, Circuit Judge. Plaintiff General Motors Corporation ("GM") sued defendants Tong Yang Industry Company, Limited ("Tong Yang"), a Taiwanese manufacturer of automobile replacement grilles bearing two GM trademarks, and Keystone Automotive Industries, Inc. ("Keystone"), a distributor of Tong Yang's grilles, for trademark infringement and unfair competition. On the issue of likelihood of confusion — the sole issue on appeal — the District Court granted summary judgment in favor of the defendants and denied GM's motion for summary judgment. We agree with the District Court that there is no likelihood of confusion "at the point of sale" to body shops and on the internet. We disagree and reverse and remand on the issue of

1

likelihood of "downstream" consumer confusion due to genuine disputes of material fact regarding the visibility of the allegedly infringing portion of the grilles.

## I. BACKGROUND

GM, currently the world's largest automaker, manufacturers and sells replacement parts for its vehicles. Tong Yang produces and sells aftermarket replacement parts for automobiles, including some manufactured by GM. Tong Yang sells these parts to distributors like Keystone, which in turn sells most of the parts to collision repair shops (including some owned by GM) and also sells some parts to individuals over the internet.

GM owns registered trademarks in the Chevrolet "bow tie" design and the "GMC" design. The instant case arose out of Tong Yang's manufacturing and Keystone's distribution of replacement grilles with "placeholders" bearing these two designs. *See* Exhibits A and B.

For Chevrolets, the placeholder is a recessed space on the front of the grille in the shape of a bow tie in which a heavy plastic GM "bow tie" emblem is inserted. For GMC vehicles, the placeholder is a raised pedestal upon which a red-lettered "GMC" emblem is mounted. Each emblem is a separate part always purchased from GM and is secured to the placeholder with studs or pins extending from the back of the emblem so as to pass through holes in the placeholder. After inserted and secured in the placeholder of a Chevrolet grille, the "bow tie" emblem partially or wholly fills the "bow tie" recess. Similarly, when mounted onto a placeholder of a GMC grille, the "GMC" emblem wholly or partially covers the underlying "GMC" logo on the placeholder. *See* Exhibits C and D.

After GM filed suit, Tong Yang changed its grilles to remove the trademarked "bow tie" and "GMC" designs from its placeholders. These modifications have apparently decreased demand for the Tong Yang grilles.

GM's complaint alleges that the defendants' use of the trademarks constitutes: (1) trademark infringement under 15 U.S.C. § 1114(1); (2) unfair competition under 15 U.S.C. § 1125(a)(1); (3) trademark infringement under Michigan common law; and (4) unfair competition under Michigan common law. The parties submitted cross-motions for summary judgment on the dispositive issue for all these claims — whether the defendants' use of the trademarks is likely to cause confusion as to the origin or sponsorship of the replacement grilles, i.e., that GM manufactured or sponsored the manufacture of the defendants' grilles. The District Court granted summary judgment in favor of the defendants, holding that there is no likelihood of confusion. This appeal ensued.

## II. STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment on claims of trademark infringement or unfair competition. *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005). Summary judgment should be granted whenever "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). We draw all reasonable inferences in favor of the non-moving party. *Id.*

## III. LIKELIHOOD OF CONFUSION

GM's trademark infringement and unfair competition claims under state and federal law are closely related, and their resolution hinges on the central issue of likelihood of confusion:

> [T]rademark infringement is a type of unfair competition . . . .
>
> In many factual situations, the same result is reached whether the legal wrong is called trademark infringement or unfair competition.  In such cases the courts often lump them together and speak of them as identical concepts.  Today, the keystone of that portion of unfair competition law which relates to trademarks is the avoidance of a likelihood of confusion in the minds of the buying public.  Whatever route one travels, whether by trademark infringement or unfair competition, the signs give direction to the same enquiry—whether defendant's acts are likely to cause confusion.

J. Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition* §§ 2:7-2:8 (4th ed. 1996); *see also AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 791 (6th Cir. 2004) (noting that federal trademark and unfair competition claims require the likelihood of confusion inquiry); *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996) ("[F]alse designation is simply a species of unfair competition . . . That the two claims are one and the same is made clear both by the language of the statute, and by many cases."); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983) (stating that Michigan common law unfair competition claims use the same likelihood of confusion test as the Lanham Act); *K'Arsan Corp. v. Christian Dior Perfumes, Inc.*, No. 97-1867, 1998 WL 777987, at *8 (6th Cir. Oct. 21, 1998) (unpublished) (stating that the likelihood of confusion inquiry applies to claims of unfair competition and of trademark infringement under Michigan common law).

> Our Court employs an eight-factor test for determining likelihood of confusion:
>
> 1. strength of the plaintiff's mark;
> 2. relatedness of the goods;
> 3. similarity of the marks;
> 4. evidence of actual confusion;
> 5. marketing channels used;
> 6. likely degree of purchaser care;
> 7. defendant's intent in selecting the mark; [and]
> 8. likelihood of expansion of the product lines.

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 764 (6th Cir. 2005) (quoting *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)).  Even though a court must balance these factors when evaluating likelihood of confusion, *id.*, not all of them are necessarily helpful in any given case, *see Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).  Moreover, this list, though generally the predominate focus of analysis, is not exhaustive, and "[o]ther variables may come into play depending on the particular facts presented."  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 n.11 (9th Cir. 1979).

This Court has joined the vast majority of courts in extending the likelihood of confusion inquiry beyond only the point of sale.  *See Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1245 (6th Cir. 1991); 3 McCarthy, *supra*, at § 23:5.  Accordingly, we will first address likelihood of confusion at the point of sale before venturing downstream.

### A.  Point-of-Sale Confusion

Likelihood of confusion at the point of sale involves a purchaser's confusion as to a product's origin or sponsorship occurring at the time of purchase.  3 McCarthy, *supra*, at § 23:5.  The points of sale for most of Tong Yang's grilles are collision repair shops, but some are sold

directly to individuals over the internet. We need not exhaustively apply the eight-factor test to reach the rather obvious conclusion that there is no likelihood of confusion at the point of sale because buyers are expressly informed that they are not purchasing GM grilles.

There can be no likelihood of confusion at the point of sale where a defendant conspicuously and unequivocally informs buyers that the defendant, and not the plaintiff, is the source of the product. In *Ferrari S.P.A. Esercizio*, this Court noted that there was no likelihood of point-of-sale confusion where a manufacturer of "knockoff" Ferraris informed his purchasers that his significantly cheaper cars were not genuine Ferraris. 144 F.2d at 1244-45. Similarly, customers knowing they are purchasing a knockoff designer purse or Rolex watch simply do not confuse the counterfeit with the original. *See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000); *Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 487-88 (S.D. Fla. 1986).

Likewise, in the instant case, no purchaser has reason to be confused as to the origin of the replacement grilles. Collision repair shops ordering Tong Yang parts do so intentionally and generally at the bidding of insurance companies because non-original equipment is less expensive and reduces the cost of repairing a vehicle. Moreover, GM grilles are made by Siegel-Robert, Inc., and carry the molded letters "SRI" to identify their origin, whereas Tong Yang grilles are marked "OTN" and "Made in Taiwan." In addition, Tong Yang grilles are shipped in boxes and packaging markedly different from those containing GM grilles with conspicuous logos of Tong Yang and/or Keystone. The invoice accompanying Tong Yang parts conspicuously carries the following disclaimer:

> THESE REPLACEMENT PARTS ARE NOT MANUFACTURED BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REPLACEMENT FOR THE OEM PARTS, AND MANUFACTURED IN TAIWAN FOR NORTH AMERICA MARKET.

(J.A. at 0373, 0382.) An automobile owner would have to possess complete ignorance of this disclaimer, her insurance contract, and ordinary automobile repair practices to be confused as to the origin of a Tong Yang grille when getting her vehicle repaired. Individuals purchasing grilles directly from Keystone over the internet receive the same source information as collision repair shops and likewise could scarcely be confused. In short, the transparent and conspicuous indications that Tong Yang manufactured its grilles make confusion at the point of sale all but impossible.

## B. Downstream Confusion

In addition to point-of-sale confusion, the Sixth Circuit recognizes that a likelihood of downstream confusion, also called "post-sale" confusion, is actionable: "Since Congress intended to protect the reputation of the manufacturer as well as to protect purchasers, the Act's protection is not limited to confusion at the point of sale." *Ferrari S.P.A. Esercizio*, 944 F.2d at 1245; *see also* 3 McCarthy, *supra*, at § 23:5. Thus, injection of knockoffs into the stream of commerce may lead to a likelihood of confusion among the general public. To assess the likelihood of downstream confusion, we first apply the eight-factor test and then discuss the potential harm from the influx of Tong Yang's grilles into the stream of commerce.

### 1. *Eight-Factor Test*

Applying the eight-factor test to this case favors a finding of likelihood of confusion among the general viewing public.

### i. Strength of the Plaintiff's Mark

It is beyond dispute that Chevrolet's "bow tie" and the "GMC" design are strong trademarks in that the public readily accepts them as hallmarks of GM. *See Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985); *see also Champions Golf Club, Inc.*, 78 F.3d at 1116-18. This factor, therefore, favors a likelihood of confusion.

### ii. Relatedness of the Goods

The goods are at least somewhat closely related. Our Court has adopted the following three categories of cases for assessing the relatedness of goods:

> (1) direct competition of [goods], in which case confusion is likely if the marks are sufficiently similar; (2) [goods] are somewhat related but not competitive, so that likelihood of confusion may or may not result depending on other factors; and (3) [goods] are totally unrelated, in which case confusion is unlikely . . . These categories are helpful in gauging how important relatedness may be in the ultimate likelihood of confusion determination.

*Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1108 (6th Cir. 1991) (internal citation omitted). The goods are identical in that, as the District Court noted, "both parties produce replacement grilles for the same GM vehicles." (J.A. at 0165.) The grilles, however, are generally not directly competitive because, again in the words of the District Court, "the parties generally sell their goods to different buyers." (*Id.*) Accordingly, this factor also favors GM.

### iii. Similarity of the Marks

In general, "[s]imilarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283. The trademarks at issue are virtually identical apparently with only trivial differences. This factor further points towards a likelihood of confusion.

### iv. Evidence of Actual Confusion

For obvious reasons, evidence of actual confusion is the most important factor in assessing a likelihood of confusion. *Id.* at 284. Due to the rarity of this type of evidence, however, this factor is weighed heavily only when such evidence exists. *Id.* GM has "theorized possible methods for Defendants' customers to defraud subsequent purchasers" and has cited an instance where a collision repair shop attempted unsuccessfully to return to GM a grille manufactured neither by GM nor Tong Yang (J.A. at 0167), but GM has not proved that any member of the general public has mistaken a Tong Yang grille for a GM grille. Thus, GM has not presented evidence of actual confusion.

### v. Marketing Channels Used

"This factor . . . consists of considerations of how and to whom the respective goods or services of the parties are sold." *Homeowners Group, Inc.*, 931 F.2d at 1110. This factor involves two considerations: (1) whether the parties use the same means to market the product, and (2) whether the "predominant customers" are the same. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285. There is less likelihood of confusion "if the services of one party are sold through different marketing media in a different marketing context than those of another seller." *Homeowners Group, Inc.*, 931 F.2d at 1110. The same is true "[i]f one mark user sells exclusively at retail and the other exclusively to commercial buyers . . . since no one buyer ever buys both products." *Id.* (quoting 2 McCarthy, *supra*, at § 24:7 (2d ed. 1984)). Since this factor focuses on the point of sale, it has little bearing on the question of downstream confusion. *See Ferrari S.P.A. Esercizio*, 944 F.2d at 1245.

### vi. Likely Degree of Purchaser Care

This factor involves assessing (1) the type of goods at issue, and (2) the level of sophistication of the purchaser. As to the first inquiry, "when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases," and there is accordingly less likelihood of confusion. *Homeowners Group, Inc.*, 931 F.2d at 1111. A sophisticated purchaser exercises a high degree of care and is less likely to be confused as to a product's origin. *Id.* This factor also focuses on the point of sale and is, therefore, generally inapplicable to downstream confusion. *See Ferrari S.P.A. Esercizio*, 944 F.2d at 1245.

### vii. Defendant's Intent in Selecting the Mark

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Group, Inc.*, 931 F.2d at 1111. "Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 286. Intent can be proven by direct or circumstantial evidence. *Id.* There can be little question that Tong Yang intentionally copied GM's trademarks. Tong Yang reverse engineers the grilles to look as close as possible to the original equipment manufactured by GM. Accordingly, this factor favors GM.[1]

### viii. Likelihood of Expansion of the Product Lines

[A] 'strong possibility' that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Homeowners Group, Inc.*, 931 F.2d at 1112. Expansion could be geographic or an increase in products or services. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 287. The District Court noted that there is no evidence that either party plans to expand its grille manufacturing business. Accordingly, this factor favors the defendants.

In sum, although the eight-factor test is arguably less important in assessing downstream confusion than point-of-sale confusion since two of the factors (5 and 6) focus on the point of sale, s*ee Ferrari S.P.A. Esercizio*, 944 F.2d at 1245, the analysis favors a likelihood of downstream confusion here because, of the remaining six factors, four (1, 2, 3 and 7) favor GM, and only two (4 and 8) favor Tong Yang.

### 2. Downstream Harm

Our review of cases discussing the harm of injecting knockoffs into the stream of commerce further signals the likelihood of downstream confusion in this case. Even without point-of-sale confusion, knockoffs can harm the public and the original manufacturer in a number of ways, including: (1) the viewing public, as well as subsequent purchasers, may be deceived if expertise is required to distinguish the original from the counterfeit, *see Hermes,* 219 F.3d at 108; (2) the purchaser of an original may be harmed if the widespread existence of knockoffs decreases the original's value by making the previously scarce commonplace, *see id.*; (3) consumers desiring high quality products may be harmed if the original manufacturer decreases its investment in quality in order to compete more economically with less expensive knockoffs, *see United States v. Torkington*,

---

[1]After this suit was instituted, Tong Yang modified its grilles to remove the trademarked "bow tie" and "GMC" designs from the placeholders. GM argues that these modifications show Tong Yang's intent to copy the GM trademarks. The District Court properly excluded this subsequent remedial evidence under Fed. R. Evid. 407.

812 F.2d 1347, 1353 n.6 (11th Cir. 1987); (4) the original manufacturer's reputation for quality may be damaged if individuals mistake an inferior counterfeit for the original, *see Ferrari S.P.A. Esercizio*, 944 F.2d at 1244-45; (5) the original manufacturer's reputation for rarity may be harmed by the influx of knockoffs onto the market, *see id.*; and (6) the original manufacturer may be harmed if sales decline due to the public's fear that what they are purchasing may not be the original, *see Hermes*, 219 F.3d at 108. On the other hand, courts should be wary of overprotecting public domain ideas and works whose exploitation can lead to economic efficiency, greater competition, and lower costs for consumers.[2] *Cf.* 1 McCarthy, *supra*, at § 2:2 (reciting the policies underlying the laws of trademark and unfair competition).

Applying these principles in *Ferrari S.P.A. Esercizio*, this Court upheld the verdict of a bench trial enjoining the production of knockoff Ferrari automobiles which could damage Ferrari's reputation for quality and rarity. 944 F.2d at 1245. Other courts have reached similar conclusions in cases involving knockoff Rolex watches, *Rolex Watch U.S.A.,* 645 F. Supp. at 488, designer purses, *Hermes*, 219 F.3d at 108, and other products, *see* 3 McCarthy, *supra*, at § 23:7.

The instant case carries similar potential for downstream confusion and corresponding harm to GM and the public — if the public can actually see the underlying placeholders after the "bow tie" or "GMC" emblems are affixed to the grilles. Unaided by the defendants' conspicuously marked packaging, the invoice disclaimer, or a collision shop's expertise, the viewing public could mistake a Tong Yang grille for a GM grille. Such confusion could damage GM's reputation for quality if the public associates any inferior attributes (e.g., improper fit or cracking) of Tong Yang's grilles with GM. Other types of possible downstream harm, such as that resulting from a product's reduced scarcity, however, are largely inapplicable to this case. Nonetheless, visibility of the placeholder after the automobile is repaired and returned to the road may harm the public and GM.

### 3. *Visibility of Placeholder After GM Emblem Is Affixed*

If the placeholder cannot be seen after the Chevrolet "bow tie" or "GMC" emblem is affixed, the wholly hidden placeholder cannot cause downstream confusion as to origin or sponsorship. After all, that which defies perception cannot confuse. *Cf. Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (In a suit involving knockoff Polo shirts, the placement of the defendant's mark inside the back of the neck of each shirt did not prevent a likelihood of confusion stemming from the defendant's placement of the Polo trademark on the front of each shirt.); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 799 F.2d 867 (2d Cir. 1986) ("Because the mark is consistently visible to the purchasing public as a constant advertisement of the product on which an evaluation of it is affixed, the similarity of the marks in a post-sale setting must be taken into consideration.").

The parties dispute whether the placeholder can be seen after the emblem is secured. GM maintains that the placeholder remains visible:

> The molded marks are readily visible to the car owner when the grille is installed . . . [T]he molded "bow tie" trademark surrounds the medallion to present a proportioned trademark in comparison to the size of the grille. The molded "GMC" trademark is likewise undeniably visible, projecting a three dimensional mark with the medallion on the front surface of the molded GMC . . . .

---

[2] It is worth emphasizing that GM seeks relief only under the laws of trademark and unfair competition. Other legal theories, such as the laws of patent and trade dress, also offer protection for certain attributes of products.

Keystone admitted that the molded GMC in the grille could be seen:

> Q: The next sentence says: ["]The placeholder . . . for the grille cannot even be seen.["]   You can see the placeholder as a GMC factory grille, true?
>
> A: Yes.

(GM Final Brief at 35.)

On the other hand, Tong Yang argues that "[o]nce the trademark emblem is attached, only the emblem, and not the placeholder, is visible."  (Tong Yang Final Brief at 6.)  Keystone appears to take a middle ground, stating that "the mounted emblem hides virtually all of the accused receiver structure."  (Keystone Final Brief at 6.)

The District Court improperly resolved in favor of the defendants this factual dispute regarding the visibility of the placeholders after each emblem is affixed.  If the placeholders remain visible, the related question is raised whether the placeholders are sufficiently visible to cause a likelihood of confusion.   These genuine disputes of material fact render summary judgment inappropriate, a common disposition in evaluating likelihood of confusion. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1267 (9th Cir. 2001) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n.5 (9th Cir. 1985) ("This case underscores our warning that 'trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual.' ").

## IV.  CONCLUSION

We hold that the defendants' use of GM's Chevrolet "bow tie" and "GMC" trademarks does not pose a likelihood of point-of-sale confusion. We also hold that there are genuine disputes of material fact regarding whether the defendants' placeholders remain visible after the "bow tie" or "GMC" emblem is affixed to the defendants' replacement grilles, and, if so, whether that visibility is sufficient to create a likelihood of downstream confusion.  Accordingly, we reverse the District Court's grant of summary judgment in favor of the defendants and denial of GM's motion for summary judgment.  We remand this case for further proceedings consistent with this opinion.

## *APPENDIX*

### Exhibit A: Tong Yang Grille with "GMC" Logo on Placeholder



### Exhibit B: Closeups of Parties' Placeholders

*GM's Chevrolet"Bow-Tie" Placeholder*      *Tong Yang's "Bow-Tie" Placeholder*




*GM's "GMC" Placeholder*      *Tong Yang's "GMC" Placeholder*




### Exhibit C: GM Grille with "GMC" Emblem Attached Upon Placeholder



### Exhibit D: Tong Yang Grille with "GMC" Emblem Attached Upon Placeholder

