Sean F. Cox, United States District Judge *840 This is a trademark case about the use of a stylized "A" and the terms "Atlas," "Atlas Logistics," and "Atlas -- the Agent's Van Line." The plaintiffs are Atlas Van Lines (a household moving company), Atlas Logistics, Inc. (a logistics management service) ("Plaintiff Logistics"), and AGWI, L.L.C. (the holding company for Van Lines and Plaintiff Logistics). The defendants are Eaton Steel Bar Company (a steel manufacturer) and its affiliated trucking and logistics companies, Atlas Trucking Company, L.L.C. and Atlas Logistics, L.L.C. ("Defendant Logistics").
Plaintiffs allege four counts of trademark infringement under the Lanham Act, two counts of trademark counterfeiting under the Lanham Act, and one count of common law unfair competition. Defendant Logistics has counterclaimed against Plaintiff Logistics and AWGI for one count of unfair competition and false designation of origin under the Lanham Act, and one count of common law unfair competition. Defendant Logistics also seeks a declaratory injunction, pursuant to § 1119 of the Lanham Act, stating that Plaintiffs' trademark in "Atlas Logistics" was improperly registered and directing the Commission of Patents and Trademarks to cancel it.
Plaintiffs now move for summary judgment on all claims and counter-claims, except their infringement claim related to the stylized "A". Defendants have moved for summary judgment on all claims and counter-claims.
As explained below, the Court finds that there is no genuine issue of material fact that (1) Defendant Logistics's Lanham Act claims are not barred by laches; (2) Plaintiffs' Lanham Act claims are barred by laches to the extent they seek any form of money damages for past harm; (3) Plaintiffs' Lanham Act claims fail on the merits to the extent they seek injunctive relief; and (4) the common law claim and counterclaim for unfair competition are barred by the statute of limitations. The Court also concludes that there is a genuine issue of material fact underlying Count I and Count III of Defendant Logistics's counterclaims, and that a jury should decide who are the senior users of the "Atlas Logistics" mark.
Accordingly, the Court will deny Plaintiffs' motion as to their claims and Count I and Count III of Defendant Logistics's counterclaims, and grant Plaintiffs' motion as to Count II of Defendant Logistics's counterclaims. The Court will also grant Defendants' motion as to Plaintiffs claims, and deny it as to Defendant Logistics's counterclaims.
In sum, the only claims to survive these cross-motions for summary judgment will be Defendant Logistics's Lanham Act *841 counterclaims (Counterclaims I and III) against Plaintiff Logistics and AWGI.
BACKGROUND
Plaintiffs and the "Atlas -- The Agent's Van Line," the stylized "A," and "Atlas" marks
Plaintiff AWGI is a holding company for its co-plaintiffs Van Lines and Plaintiff Logistics. Founded in 1933, Van Lines is a moving service that focuses on transporting household goods for people moving to a new residence. Roughly 55% of Van Lines's household moving business comes from relocating their corporate client's employees, roughly 20% comes from relocating private customers, and the remainder comes from relocating government workers and members of the military. McConnell Dep. 27:13-20, November 16, 2017. On the other hand, Van Lines's sister company, Plaintiff Logistics, focuses on providing third-party logistics services for "all other commodities that are available on the marketplace." Id. at 163:5-18. "Atlas Logistics, Inc." is Plaintiff Logistics's third name: from December 11, 1995 to June 11, 2012 it operated as "Atlas Relocation Services, Inc." and from June 11, 2012 until January 9, 2015, it operated as "AWG Logistics, Inc." Id. at 165:5-166:22.
On April 10, 1990, Van Lines registered a trademark in the term "Atlas -- The Agent's Van Line" when used for "transportation of household goods by motor van." (ECF No. 70-1, PageID 2878) (Reg No. 1,591,344). On September 5, 2006, AWGI registered a trademark in a stylized "A," to be used on "clothing, namely hats and shirts" and "cloth patches for clothing." (ECF No 70-1, PageID 2874) (Reg. No. 3,137,526). This is the stylized "A":
On December 1, 2009, Van Lines registered a trademark in the term "Atlas" when used for "freight forwarding services" and the "transportation of household good of others." (ECF No. 70-1, PageID 2858) (Reg. No. 3,718, 117).
Defendants
Defendant Eaton Steel Bar Company manufactures steel products, such as bars, coils, and rods. Defendant Atlas Trucking, L.L.C., is an Eaton affiliate and focuses on shipping raw materials and finished products to Eaton's customers, suppliers, and other affiliates. Defendant Logistics is also an Eaton affiliate, and offers shipping coordination to the Eaton family of companies, its vendors, its customers, and third-party companies. Based on the Court's review of data submitted by Defendants, since 2012, roughly 75% of Trucking and Defendant Logistics's customers have come from within the Eaton family of companies. Sealed Ex. 19 to Defs' Mot. for Sum. J. (ECF No. 87). The Court's review also showed that roughly 89% of the cargo shipped by Trucking and Defendant Logistics was either "bars and rods of iron or steel" or "coils." Id.
Defendant Logistics and Trucking appear to use the following logos (or substantially similar variants on the following logos):
*842 (ECF No. 71, PageID 3006)
(ECF No. 1, PageID 6).
The Cease-and-Desist Letters and the "Atlas Logistics" Mark
On January 10, 2012, Plaintiffs' counsel sent a cease-and-desist letter to Defendants, alleging violations of its "Atlas" trademark. Plaintiffs claimed that its "Atlas" mark applied to "moving and storage services as well as freight forwarding and logistics services." (ECF No. 70-1, PageID 2856). Plaintiffs further asserted "that it was the rightful owner of any website domain name that incorporates the mark 'Atlas' to offer moving, freight forwarding, and logistics services." Id. Plaintiffs alleged that Defendants' use of the terms "Atlas Trucking" and "Atlas Logistics" was likely to cause consumer confusion as to the source of Defendants' sponsorship and that Defendants were trying to trade off of Plaintiffs' good will. (ECF No. 70-1, PageID 2856-2857). Plaintiffs attached their "Atlas" trademark registration to this letter.
On January 23, 2012, Defendants responded, "vehemently" denying that they made any attempt to misappropriate Plaintiffs' good will. (ECF 70-1, PageID 2861). Defendants also argued that the "Atlas" registration only secured trademark rights related to "freight forwarding" and "the transportation of household goods of others" and that Defendants were not engaged in providing either of these services. Id. Defendants stated that "AWGI is in the business of moving households in enclosed trailers, whereas, Atlas is in the business of trucking steel bars and other steel-related products on flatbeds." Id. Because of their disparate services and customer bases, Defendants argued that consumers would not be confused. Id.
After this exchange, neither Plaintiffs nor Defendants took any further action to enforce any trademark rights for more than 5 years.
On May 19, 2015, Plaintiffs registered a trademark in "Atlas Logistics" for-among other things-"transportation logistics services, namely, arranging the transportation of goods for others." (ECF No. 70-1, PageID 2869) (Reg. No. 4,737,616). On this registration, Plaintiffs stated that they *843 first used this term in commerce on December 3, 2012. Id.
After receiving a few job applications on Defendants' forms, Plaintiffs sent a second cease-and-desist letter on November 17, 2016. (ECF No. 76, PageID 3428). Plaintiffs asserted that Defendants were infringing upon their trademarks in "Atlas" and "Atlas Logistics."
On June 29, 2017, Plaintiffs filed their Complaint, alleging seven counts: (1) infringement of their "Atlas" trademark, (2) infringement of their "Atlas Logistics" trademark, (3) infringement of their stylized "A" trademark, (4) infringement of their "Atlas -- the Agents' Van Line" trademark, (5) counterfeiting of their "Atlas" trademark, (6) counterfeiting of their "Atlas Logistics" trademark, and (7) common law unfair competition. Plaintiffs seek restitution, disgorgement of Defendants' profits, damages, punitive damages, a permanent injunction, and the transfer of Defendants' social media accounts. (ECF No. 1, PageID 14).
On February 15, 2018, Defendant Logistics filed three counterclaims against AWGI and Plaintiff Logistics: (1) unfair competition and false designation of origin for Plaintiffs' use of the mark "Atlas Logistics," (2) common law unfair competition, and (3) a request for a declaratory injunction cancelling Plaintiffs' registration in "Atlas Logistics." Unlike Plaintiffs, Defendant Logistics requested a jury trial.
All Plaintiffs and all Defendants now move for summary judgment. Plaintiffs argue that Defendant Logistics's Lanham Act counterclaims are barred by laches and that the common law claim is barred by the statute of limitations. Plaintiffs also argue that Defendants' use of the term "Atlas" is likely to cause consumer confusion as to its four federally registered trademarks. Plaintiffs also contend that, under trademark and common-law principles such as tacking and the "zone of natural expansion," it must prevail on its "Atlas Logistics" claims as the senior user.
Defendants argue that Plaintiffs' claims are barred by laches. Defendants also argue that there is no likelihood of consumer confusion as to the stylized A, "Atlas," and "Atlas -- the Agents' Van Line", and that they are the senior users of the "Atlas Logistics" mark.
ANALYSIS
Summary judgment will be granted where there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson , 477 U.S. at 252, 106 S.Ct. 2505. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." Skousen v. Brighton High Sch. , 305 F.3d 520, 526 (6th Cir. 2002).
I. Laches
Both sides argue that some or all of their opponents' claims are barred by the doctrine of laches and that their position is supported by Plaintiffs' 2012 cease-and-desist letter and Defendants' response.
"The Lanham Act does not contain a statute of limitations, so determining whether a Lanham Act claim is time-barred *844 depends upon a defendant's ability to show that the claim is barred by laches." Kehoe Component Sales, Inc. v. Best Lighting Products, Inc. , 796 F.3d 576, 584 (6th Cir. 2015) (internal citations omitted). Laches is "the negligent and unintentional failure to protect one's rights." Id. To successfully assert laches, a party must show (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. Id. (citing Nartron Corp. v. STMicroelectronics, Inc. , 305 F.3d 397, 408 (6th Cir. 2002) ). "[A]ny delay attributable to [a] [party] must be measured from a time at which the [party] knew or should have known that [the] infringement [of his or her rights] ripened into a provable claim." Kellogg Co. v. Exxon Corp. , 209 F.3d 562, 569-70 (6th Cir. 2000). "Although laches precludes a plaintiff from recovering damages, it does not bar injunctive relief." Id. at 568.
In the Sixth Circuit, there is a strong presumption that any delay by the plaintiff is reasonable if the applicable state statute of limitations has not lapsed. Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc. , 270 F.3d 298, 320 (6th Cir. 2001). Conversely, it is " 'presume[d]' that an action is barred if not brought within the period of the statute of limitations ..." Tandy Corp. v. Malone & Hyde, Inc. , 769 F.2d 362, 365 (6th Cir. 1985) (citations omitted).
For trademark cases in Michigan, the applicable statute of limitations is the three-year period for injury to personal property. Herman Miller , 270 F.3d at 321 (citations omitted). "[A] delay beyond the three-year statutory period is presumptively prejudicial and unreasonable." Nartron Corp. , 305 F.3d at 408. This period is measured from the time at which the plaintiff had "actual or constructive knowledge of the alleged infringing activity." Id. ; see also Kellogg Co. , 209 F.3d at 569-70.
A. Plaintiff's Laches Argument
Plaintiffs argue that their January 10, 2012 letter put Defendants on notice that Plaintiffs claimed trademark rights in "Atlas Trucking" and "Atlas Logistics" by virtue of their "Atlas" registration. Thus, Plaintiffs contend that the three-year statute of limitations has run on Defendant Logistics's Lanham Act claims, and that they are presumptively barred by laches.
For Plaintiffs' argument to succeed, the January 10, 2012 letter must have conveyed "actual or constructive knowledge" of Plaintiffs' use of the mark "Atlas Logistics." Nartron Corp. , 305 F.3d at 408. The Court concludes that it did not. As Defendants point out, Plaintiffs used the phrase "Atlas Logistics" in the January 10, 2012 letter only to reference Defendants' activity. (ECF No. 70-1, PageID 2856). To be sure, Plaintiffs asserted that they were the owners of "numerous trademarks encompassing the word 'Atlas' for moving and storage services as well as freight forwarding and logistics services" and that they believed themselves to be the "rightful owner of any domain name that incorporates the mark 'Atlas' to offer moving, freight forwarding, and logistics services." Id. (emphasis added). But, for the three-year clock to start, Defendants must have received notice of the "alleged infringing activity," which, in this case, would be Plaintiffs' use of the mark "Atlas Logistics." See Nartron Corp. , 305 F.3d at 408 ; See also Defendant Logistics's Counterclaim (ECF No. 27) (describing the alleged infringing activity as "[t]he use by AWGI and [Plaintiff Logisitics] of the mark 'Atlas Logistics' " throughout). The January 10, 2012 letter provides no indication that Plaintiffs had used, or were using, the mark "Atlas Logistics" at that time. In fact, had Defendants searched for a trademark registration for "Atlas Logistics"
*845 when they received the first cease-and-desist, they would not have found it-Plaintiffs did not register that mark until 2015. Similarly, had Defendants searched for another company named "Atlas Logistics" after receiving the first cease-and-desist, they would not have found Plaintiff Logistics, which was operating as "Atlas Relocation Services, Inc." at that time. Moreover, Plaintiffs have provided no evidence or argument that Defendants should have otherwise been on constructive notice about Plaintiffs' use of the "Atlas Logistics" mark as of January 10, 2012.[1]
The record indicates that Defendants did not receive actual or constructive notice of Plaintiffs' use of the mark "Atlas Logistics" until Plaintiffs' second cease-and-desist letter on November 17, 2017. Defendant Logistics filed its counterclaims on February 15, 2018-well within the three-year window. Thus, Defendant Logistics's delay is presumptively reasonable, and the Court concludes that Defendant Logistics's counterclaims are not barred by laches.
B. Defendants' Laches Argument
Defendants argue that all of Plaintiffs' Lanham Act claims are barred by laches because they failed to take any action after sending the January 10, 2012 cease-and-desist letter. Plaintiffs respond that they reasonably relied on Defendants' response to their letter, and that they did not think they had a provable claim until they re-investigated in 2016.
Here, the alleged infringing activity is Defendant's use of the terms "Atlas Trucking" and "Atlas Logistics." Plaintiffs' first cease-and-desist letter clearly shows that they had actual knowledge of Defendants' use of these terms as of January 10, 2012. Plaintiffs did not file their lawsuit until June 29, 2017. Thus, Plaintiffs claims are presumptively barred.
In order to rebut this presumption, Plaintiffs must (1) rebut the presumption of prejudice; (2) establish that there was a good cause for its delay; or (3) show that Defendants engaged in "particularly egregious conduct which would change the equities significantly in [Plaintiffs'] favor." Nartron Corp. , 305 F.3d at 409.
Plaintiffs argue that they had good cause for their delay because Defendants either misrepresented the type of services they provided or expanded their services sometime after January 2012 to include shipping everything from "soft drinks to steel." However, the Court is not persuaded by these arguments. Defendants' response to the first letter merely stated their reasons for concluding that there was no trademark infringement. Companies routinely send this type of response in the face of an infringement allegation. Further, Plaintiff did not wholly rely on Defendants' January 23, 2012 response. Suter Dec. ¶ 9 ("Upon receipt of [Defendants' response] AWGI conducted a review of all evidence of [Defendants'] services available at the time..."). After their independent investigation, Plaintiffs could have disagreed with Defendants' conclusion and filed suit, but decided not to. Moreover, Defendants have offered uncontradicted *846 evidence that the scope of their services and advertisements did not change from 2012 to 2017. (ECF No. 79, PageID 3660). For these reasons, Defendants' response to the first cease-and-desist letter does not constitute good cause for Plaintiffs' delay.
Plaintiffs also argue that their delay was justified by Defendants' progressive encroachment. Progressive encroachment "allows the plaintiff to demonstrate that although it might have been justified in bringing suit earlier but did not, certain factors now exist that have prompted it to do so." Kellogg , 209 F.3d at 571. Progressive encroachment requires a change in something about Defendants' use of the mark. Nartron , 305 F.3d at 410. Invoking this doctrine, Plaintiffs argue that Defendants' infringement began when they expanded their business to ship non-steel material. However, as explained above, Plaintiff has not offered evidence that Defendants actually expanded their business, and Defendants have offered evidence that their services and advertisements remained constant from 2012 to 2017. For this reason, Plaintiffs' progressive encroachment argument fails.
Plaintiffs also argue that Defendants were not prejudiced by the delay in bringing suit because there is no indication that Defendants would have stopped using the marks. This argument, however, glosses over the Sixth Circuit's recognition that "any prejudice is sufficient, including an increase in potential damages." Nartron 305, F.3d at 411. In their prayer for relief, Plaintiffs seek "the Defendants' profits from sales derived during all periods of wrongful use of the Atlas Marks." (ECF No. 1, PageID 14). If Plaintiffs would have brought this suit sooner, these damages would have been lower. Thus, Defendants were prejudiced by Plaintiffs' delay.
The Court concludes that Plaintiffs have not rebutted the presumption of laches and, therefore, their claims for money damages are barred. However, because laches does not bar Plaintiffs' request for injunctive relief, the Court must now turn to the merits of Plaintiffs' trademark infringement and counterfeiting claims.
II. Plaintiff's Trademark Infringement Claims
Plaintiffs alleged a trademark infringement claim for each of its four federally registered trademarks: the stylized "A," "Atlas," "Atlas -- the Agent's Van Line" and "Atlas Logistics." The "touchstone of liability" for a trademark infringement claim is whether the alleged infringing party's use of the disputed mark is "likely to cause confusion among consumers" regarding the origin of the services offered by the parties. Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center , 109 F.3d 275, 280 (6th Cir. 1997). When determining whether a likelihood of confusion exists, a court must examine and weigh eight factors: (1) the strength of the mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of the parties in selecting the mark; and (8) likelihood of expansion of the product line. Id. (citing Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc. , 670 F.2d 642, 648 (6th Cir. 1982) ) ("the Frisch factors"). These factors are "interrelated" and "imply no mathematical precision." Id. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." Id.
The parties agree that their common use of the mark "Atlas Logistics" causes a likelihood of consumer confusion. Thus, the *847 below application of the Frisch factors only applies to Plaintiffs' claims regarding "Atlas," "Atlas -- the Agents' Van Line," and the stylized "A."
a. The Strength of the Marks
This factor focuses on the distinctiveness of a mark and its recognition among the public. Therma-Scan, Inc. v. Thermoscan, Inc. , 295 F.3d 623, 630 (6th Cir. 2002). A trademark's distinctiveness and resulting strength depends partly upon which of four categories it occupies: "generic, descriptive, suggestive, and fanciful or arbitrary." Id. Whereas a descriptive trademark "specifically describes a characteristic or ingredient of an article," Champions Golf Club, Inc. v. The Champions Golf Club, Inc. , 78 F.3d 1111, 1117 (6th Cir. 1996) (internal quotation marks and citation omitted), "[a]n arbitrary mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers." Daddy's Junky Music Stores , 109 F.3d at 280-81 (internal quotation marks and citations omitted). Arbitrary marks are stronger than suggestive marks. See Induct-O-Matic Corp. v. Inductotherm Corp. , 747 F.2d 358, 362-363 (6th Cir. 1984).
Here, Defendants argue that "Atlas" is a suggestive mark that indicates strength because of its connection to the mythological Greek titan who was condemned to hold up the sky. On the other hand, Plaintiffs argue that it is an arbitrary mark because they do not sell "strength" or offer a service in which "strength" is a characteristic or ingredient.
The Sixth Circuit appears to have already weighed in on this precise question. In Atlas Supply Co. v. Atlas Brake Shops, Inc. , 360 F.2d 16 (1966), the Sixth Circuit suggested that "Atlas" is a "rather weak mark" because of its widespread use. Id. at 18.
Moreover, Plaintiffs' marketing material contradicts their argument that Atlas is an arbitrary mark. In 2003, Plaintiffs distributed an eight-page brochure to advertise its services. (ECF No. 70-2, PageID 2895). On the last page of this brochure, Plaintiffs stated, "Ever since a mythical titan was credited with shouldering the heavens, the name Atlas has stood for rare strength." (ECF No. 70-2, PageID 2950). This advertisement is a strong indication that even Plaintiffs consider the Atlas mark to be suggestive-Apple would not describe its computers as fruit-like, and Camel would not describe its cigarettes as dromedary-like, but Plaintiffs have described their services as Atlas-like. Thus, the Court concludes that (ironically) "Atlas" is a weak mark because it is suggestive of strength, and that this factor weighs against a finding that there is a likelihood of confusion.
b. Relatedness of the Goods or Services
The relatedness of goods or services can be classified into three categories. "First, if the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar." Daddy's Junky Music Stores , 109 F.3d at 282. "Second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors." Id. "Third, if the goods or services are totally unrelated, confusion is unlikely." Id. "The relatedness inquiry therefore focuses on whether goods or services with comparable marks that are similarly marketed and appeal to common customers are likely to lead consumers to believe that they come from the same source, or are somehow connected with or sponsored by a common company"
*848 Therma-Scan, Inc. , 295 F.3d at 623 (internal citations omitted). Further, goods or services are not necessarily related "simply because they exist in the same broad industry." Id.
Defendants have provided voluminous evidence about the cargo they ship and the customers they serve. See Sealed Ex. 19 to Defendant's Consolidated Motion for Summary Judgment (ECF No. 87). Based on the Court's review of these records, Defendants mainly ship steel and other industrial products for Eaton-affiliated companies. In contrast, Plaintiffs mainly ship household goods for corporate employees, government employees, members of the military, and other individuals. Although these services are within the same broad industry (shipping), they do not appear to be related.
Further, the only evidence that Plaintiffs might compete with Defendants is a sworn statement from Plaintiffs' corporate counsel that, "Plaintiffs are capable of and provide transportation services for practically every type of good with only a few exceptions (e.g. hazardous materials)." Suter Dec. ¶ 19. (ECF No. 76-2, PageID 3419). But this statement does not establish that Plaintiffs ship steel products or other industrial goods. Thus, this factor weighs against a finding that there is a likelihood of confusion.
c. Similarity of the Marks
This factor entails more than a simple side-by-side comparison of the trademarks in question. Homeowners Group, Inc. v. Home Marketing Specialists, Inc. , 931 F.2d 1100, 1109 (6th Cir. 1991) (explaining that "in evaluating similarity of marks, it is axiomatic in trademark law that side-by-side comparison is not the test") (internal quotation marks and citation omitted). Instead, the relevant inquiry is whether a particular trademark, when viewed alone, would lead to uncertainty about the goods or services that it identifies. Daddy's Junky Music Stores , 109 F.3d at 283 (noting that "courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark") (internal quotation marks and citation omitted); see also Homeowners Group , 931 F.2d at 1109 ("A court must determine, in the light of what occurs in the marketplace, whether the mark will be confusing to the public when singly presented.") (internal quotation marks and citation omitted). As such, a detailed analysis of specific features of a trademark is not appropriate; rather, "courts must view marks in their entirety and focus on their overall impressions, not individual features." Daddy's Junky Music Stores , 109 F.3d at 283.
Here, the marks are undoubtedly similar. Plaintiffs have operated as "Atlas" for decades, and Defendants now operate as "Atlas Trucking" and "Atlas Logistics." When presented with any one of the relevant marks, a consumer could conclude that they identify a common source. Thus, this factor favors a finding of a likelihood of confusion.
d. Evidence of Actual Confusion
"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." Daddy's Junky Music Stores , 109 F.3d at 284 (citation omitted). "The existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists."
*849 Homeowners Group , 931 F.2d at 1110. Similarly, confusion that is brief or that occurs among individuals who are not familiar with the products in question is entitled to considerably less weight than are "chronic mistakes and serious confusion of actual customers." Id.
Plaintiffs point to four pieces of evidence in an attempt to establish that there has been actual confusion. First, on August 24, 2017, an Indiana police officer called Defendants to inquire why one of their trucks was parked in front of a residence for two days. The truck actually belonged to Plaintiffs. Second, on August 24, 2017, a person seeking household moving services called Defendants, believing them to be Plaintiffs. Third, one of Plaintiffs' third-party logistics partners denied a transaction due to "credit issues," that actually belonged to Defendants. Fourth, Plaintiffs commissioned a market research survey that concluded that 19% of prospective consumers of freight transportation believed that Plaintiffs and Defendants had some sort of relationship based on online search results. (ECF No. 72).
Three of these incidents have little, if any, probative value. The Indiana police officer and the third-party logistic partner are not actual consumers, so their confusion is "entitled to considerably less weight." Homeowners Group , 931 F.2d at 1110. Similarly, even though the market research survey focused on "prospective clients," this is still not the same as focusing on "actual consumers," who presumably exercise more care in choosing their freight hauler than a survey participant does when filling out a form. Thus, Plaintiffs only point to one meaningful instance of actual confusion: the August 24, 2017 call requesting moving services.
Based on the evidence presented, the Court must conclude that, in the years that Plaintiffs and Defendants have simultaneously used the term "Atlas" to advertise their respective services, there has been only one instance of actual consumer confusion. This lack of significant actual confusion leads the Court to infer that no likelihood of confusion exists. Id.
e. Marketing Channels Used
In considering this factor, the Court must determine "how and to whom the respective goods or services of the parties are sold." Leelanau Wine Cellars, Ltd. v. Black & Red, Inc. , 502 F.3d 504, 519 (6th Cir. 2007) (quoting Gen. Motors Corp. v. Keystone Auto. Indus., Inc. , 453 F.3d 351, 357 (6th Cir. 2006) ). There is less likelihood of confusion where the goods are sold through different avenues. Id. "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion [also] decreases." Therma-Scan , 295 F.3d at 636.
Defendants contend that Plaintiffs advertise through national ads and magazines while Defendants rely on Eaton Steel for most of their business. Plaintiffs counter that, in fact, Plaintiffs and Defendants maintain websites to advertise their services, and all seek customers from "load boards."
At the very least, Plaintiffs and Defendants both use websites as a marketing channel. Thus, this factor favors a finding of a likelihood of confusion.
f. Likely Degree of Consumer Care.
Generally, the standard for determining whether a likelihood of confusion would arise is predicated upon an ordinary buyer exercising ordinary caution. A "higher degree of care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication." Homeowners Grp. , 931 F.2d at 1111. "This expectation of greater attention, where appropriate, diminishes the likelihood *850 of confusion." Therma-Scan , 295 F.3d at 638.
Here, the customers for Plaintiffs and Defendants tend to be sophisticated. Plaintiffs generally deal with corporations, government procurement officers, and people entrusting most of their worldly possessions to them to make a life-changing move. Defendants generally deal with commercial businesses that are shipping valuable cargo. To the extent that Plaintiffs also ship commercial goods, they deal with similarly sophisticated customers. These customers will exercise great care in selecting their movers. Thus, this factor weighs against a finding of a likelihood of confusion.
g. Defendant's Intent
Courts have held that "[i]f a party chooses a mark with the intention of creating confusion between its products and those of another company, 'that fact alone may be sufficient to justify an inference of confusing similarity.' " Therma-Scan , 295 F.3d at 638 (quoting Daddy's Junky Music Stores, Inc. , 109 F.3d at 286 ). Circumstantial evidence of copying, particularly the use of a contested mark with knowledge that the mark is protected, may be sufficient to support an inference of intentional infringement where direct evidence is not available. Id. at 638-39. However, knowledge of a trademark, alone, will not support a finding of intent to confuse if other circumstances show that the defendant believed there was no infringement. See AutoZone, Inc. v. Tandy Corp. , 373 F.3d 786, 800 (6th Cir. 2004). Further, absent a showing of bad faith, "intentions are irrelevant." Wynn Oil Co. v. Thomas , 839 F.2d 1183, 1189 (6th Cir. 1988).
Here, there is no indication that Defendants selected the "Atlas Trucking" or "Atlas Logisitics" marks with ill intent. Defendants assert that "[t]hese names were chosen in keeping with a mythological theme common to the Eaton Steel family of companies like Hercules Drawn Steel Corporation, Titan Metallurgy L.L.C., and Apollo Heat Treat.8" (ECF No 71, PageID 3013). If Defendants had checked the federal trademark registrations when they incorporated Atlas Trucking or Atlas Logistics, the only registered mark they would have seen was "Atlas -- the Agents' Van Lines." Further, until January 9, 2015, Plaintiff Logistics operated as either "Atlas Relocation Services, Inc." or "AWG Logistics, Inc." Thus, the Court concludes that Defendants did not have ill intent. However, good intentions are irrelevant to the Court's likelihood-of-confusion finding.
h. Likelihood of Expansion
The parties devote very little attention to this factor. Plaintiffs claim that it is inapplicable because the parties already perform the same services for the same goods. Defendants claim that the parties could not cross into each other's businesses, "even if [they] wanted to," due to licensing issues and incompatible fleets. The parties have provided an insufficient evidentiary basis for the Court to consider this factor.
i. Conclusion for Trademark Infringement Claims
The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way. Although some of the above factors favor a finding of a likelihood of confusion, the Court concludes that there is no likelihood of confusion because (1) "Atlas" is a weak mark, (2) Plaintiffs and Defendants provide different services to different customer bases, (3) there is only one documented instance of actual consumer confusion after *851 years of simultaneous use by Plaintiffs and Defendants, and (4) the parties' customers are sophisticated and tend to exercise great care in making decisions. Thus, the Court will grant summary judgment in favor of Defendants on Plaintiffs' trademark infringement claims.
III. Counterfeiting Claims
Because the Court concludes that Defendants are entitled to summary judgement on Plaintiffs' trademark infringement claims, Defendants are also entitled to summary judgment on Plaintiffs' counterfeiting claims. See, e.g. , Ohio State University v. Skreened Ltd. , 16 F.Supp.3d 905, 911 (S.D. Ohio, 2014) ("[T]o establish liability for trademark counterfeiting, Plaintiff must first prevail on its infringement claim and then also show that Defendants intentionally used Plaintiff's mark knowing it was a counterfeit.").
IV. Senior User of "Atlas Logistics" Mark
The parties agree that their common use of "Atlas Logistics" causes a likelihood of confusion. Thus, this trademark infringement claim will turn on who first used the mark "Atlas Logistics." See, e.g. Allard Enterprises, Inc. v. Advanced Programming Resources, Inc. , 249 F.3d 564, 572 (6th Cir. 2001) (The rights of a federally registered trademark "are always subject to any superior common law rights acquired by another party through actual use prior to the registrant's constructive use.")
Defendants have offered evidence that they used "Atlas Logistics" at least as early as September 30, 2005. (ECF No. 58-3, PageID 2622).
Plaintiffs did not register the "Atlas Logistics" mark until May 19, 2015. On this registration, they stated that they first used this mark in interstate commerce on December 3, 2012. Thus, purely based on the registrations provided, it appears clear-cut that Defendants are the senior use of "Atlas Logistics."
To avoid this conclusion, Plaintiffs state that the December 2, 2012 date was given in error and provide sixteen documents that they argue show that they engaged in the logistics business before Defendants used "Atlas Logistics." However, none of these documents show the use of the term "Atlas Logistics" before September 30, 2005.
Plaintiffs offer two more arguments as to why it should be considered the senior user of "Atlas Logistics." Plaintiffs argue that it can "tack" the "Atlas Logistics" mark onto its preexisting marks because it operated in the logistics business long before Defendants did. It also argues that it has a right to the "Atlas Logistics" mark because it is within its "zone of expansion." Because the Court concludes that Plaintiffs' tacking argument raises a genuine issue of material fact, it does not address Plaintiffs' "zone of expansion" argument.
a. Tacking
Plaintiffs argue that they can tack "Atlas Logistics" onto their federally registered marks. Tacking applies in only "exceptionally narrow circumstances," when "the original and revised marks are 'legal equivalents' " Hana Financial, Inc. v. Hana Bank , --- U.S. ----, 135 S.Ct. 907, 910, 190 L.Ed.2d 800 (2015). To meet this standard, the two marks must "create the same, continuing commercial impression" so that consumers "consider both as the same mark". Id. at 910-911. "The commercial impression that a mark conveys must be viewed through the eyes of a consumer." Id. If the facts warrant, a judge can determine whether two marks are legal equivalents at the summary judgment, *852 but "[w]hen the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer." Id. at 908.
Here, Plaintiffs have offered evidence that they advertised their company as a logistics service before September 30, 2005. For example, at least as early as 2003, Plaintiffs began circulating advertisements that summarized its services as "global relocation, benefits, recruiting, logistics, travel." (ECF No. 70-2, PageID 2942). And in 2002, Plaintiffs received an "outstanding rating" from the "Logistics Management & Distribution Report." (ECF No. 70-2, PageID 2940). Thus, the record shows that, before Defendants began using the "Atlas Logistics" mark, Plaintiffs considered themselves to be in the logistics industry, and the logistics industry agreed. Plaintiffs have offered evidence to show that an ordinary consumer could consider "Atlas Logistics" to be the legal equivalent of Plaintiffs' marks because it creates the same, continuing commercial impression. For this reason, a jury should decide whether Plaintiffs' tacking argument has merit.
V. Common Law Claim and Counter Claim
In their complaint, Plaintiffs raise one non-Lanham Act claim: common law unfair competition. In Defendant Logistics's counterclaim, it also raises a claim of common law unfair competition. These claims are governed by Michigan's three-year statute of limitations for actions arising from injury to property. See e.g. Wigs for Kids, Inc. v. Wigs 4 Kids of Michigan, Inc. , 2017 WL 6539271 at *8 (E.D. Mich. Dec. 21, 2017) ; M.C.L.A. § 600.5805. "Limitations periods in tort actions begin to run at the time all elements, including damages, can be alleged in a proper complaint." Blazer Foods, Inc. v. Restaurant Properties, Inc. , 259 Mich.App. 241, 254, 673 N.W.2d 805 (Mich. Ct. App. 2003).
Here, Plaintiffs common law claim accrued when Defendants began using their "Atlas" marks. This appears to have been at least as early as 2005, but even if the Court uses the later 2012 date of the first cease-and-desist letter, Plaintiffs missed the statute of limitations period by more than two years. Thus, their common law claim is barred by the statute of limitations.
Defendant Logistics's common law claim is similarly barred. Using the latest date that Plaintiffs might have begun using "Atlas Logistics"-the December 3, 2012 date listed on Reg. No. 4,737,616-Defendant Logistics missed the statute of limitations by more than two years.
CONCLUSION
In sum, the Court concludes that (1) Defendant's Lanham Act counterclaims are not barred by laches; (2) Plaintiffs' Lanham Act claims are barred by laches to the extent they seek past money damages; (3) Plaintiffs' Lanham Act claims fail on the merits to the extent that they seek injunctive relief; (4) the common law unfair competition claim and counterclaim are barred by the statute of limitations, and (5) a jury should decide who is the senior user of the "Atlas Logistics" mark.
ORDER
For these reasons, the Court DENIES Plaintiffs' motion for summary judgment as to their claims and as to Counts I and III of Defendant Logistics's Counterclaims, and GRANTS Plaintiffs' motion as to Count II of Defendant Logistics's Counterclaims. Further, the Court GRANTS Defendants' motion for summary judgment *853 as to Plaintiffs' claims, and DENIES Defendants' motion as to Defendant Logistics's counterclaims.
According, the only claims to survive these cross motions for summary judgment are Defendant Logistics's Lanham Act counterclaims against AWGI and Plaintiff Logistics (Counts I and II). Therefore, the Court DISMISSES Atlas Van Lines, Inc., Atlas Trucking Company, L.L.C., and Eaton Steel Bar Company from this action.
IT IS SO ORDERED.

Despite listing December 3, 2012 as the first date that they used "Atlas Logistics" in commerce, Plaintiffs did use that mark in one of their brochures from 2007. (ECF No. 70-2, PageID 2973). However, constructive notice "impute[s] notice to a [party] who claims ignorance of [another party's] conduct that a reasonably prudent person in the trade should been aware of." 6 McCarthy on Trademarks and Unfair Competition § 31.38 (5th ed.) (citing Loma Linda Food Co. v. Thomson & Taylor Spice Co. , 47 C.C.P.A. 1071, 279 F.2d 522, 525 (1960) ). Plaintiffs offer no reason for the Court to conclude that this two-page brochure would have been found by Defendants during a reasonably prudent inquiry.